UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBIN D. HARTLEY, *et al.*,

   Plaintiffs,

   v.

BANK OF AMERICA, N.A., *et al.*,

   Defendants.

Case No. C16-1640RSL

ORDER GRANTING IN PART RCS' MOTION TO DISMISS

This matter comes before the Court on the "Fed. R. Civ. P. 12(b)(6) Motion of Defendant Residential Credit Solutions, Inc." Dkt. # 15. Plaintiffs filed this lawsuit against a number of lenders, loan servicers, trustees, and other banking institutions alleging technical errors and illegal acts that delayed plaintiffs' ability to modify their home loan and caused damage. Residential Credit Solutions ("RCS") seeks dismissal of eight of the claims asserted, arguing that they are not plausible based on the facts alleged. Having reviewed the complaint, the attached exhibits, and the memoranda submitted by the parties,[1] the Court finds as follows:

---

[1] Plaintiffs' request to strike citations to cases that are on appeal and/or were not chosen for publication in the Federal Reporter series is DENIED. The Court also denies plaintiffs' request to strike sections of defendant's reply brief in which it notes that plaintiffs failed to

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 1

# BACKGROUND

In March 2006, plaintiff Robin Hartley executed a promissory note for $500,800.00, payable to the order of First Magnus Financial Corp. Decl. of Douglas A. Johns (Dkt. # 9), Ex. 2.[2] The note was secured by a deed of trust on real property located at 17134 111th Ave. NE, Bothell, Washington. Id., Ex. 3. The deed of trust lists First Magnus as the lender, Stewart Title as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as both the beneficiary of the trust and the "nominee" for the lender. Id.

Plaintiffs began having trouble making their mortgage payments in 2008. At the time, Countrywide Home Loans Servicing LP was servicing plaintiffs' mortgage and communicated with them regarding amounts past due and its intent to accelerate the loan. Id., Exs. 4, 5, and 30. On or about April 29, 2009, Robin Hartley and BAC Home Loans Servicing, LP (identifying itself as the lender) agreed to modify the loan, amending and supplementing the original note and deed of trust to increase the principal balance to $525,243.52 and to reduce the annual interest rate. Robin Hartley signed the Loan Modification Agreement on May 19, 2009. Id., Ex. 6. The modification was not countersigned until three years later, by which time BAC Home Loans Servicing, LP had merged into Bank of America, N.A. Bank of America executed the agreement on September 10, 2012. Id., Ex. 7.

Plaintiffs made their last payment on the loan in July 2009.

In April 2012, MERS purportedly assigned its interests as beneficiary of the deed

---

respond to certain arguments.

[2] At some unknown point in time, the note was endorsed over to Countrywide Bank, N.A., and then to Countrywide Home Loans, Inc. Id.

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 2

of trust to Bank of New York Mellon, as trustee for certain certificate holders (hereinafter, "BNYM"). In January 2013, a law firm acting on behalf of an unidentified "Deed of Trust Beneficiary" notified plaintiffs that they were in default. The notice identified BNYM as the owner of the note and Bank of America as the servicer. Plaintiffs requested mediation, and the matter was referred by the Washington Department of Commerce. Months passed while Bank of America decided whether or not it wanted to pursue the notice of default, pursue mediation, and/or offer a loan modification. Id., Ex. 30. Whatever efforts Bank of America was prepared to make were cut off when the servicing of the loan was transferred to RCS in or before September 2013. Id., Exs. 12, 13, and 30. RCS promptly notified plaintiffs that they were in default and that RCS intended to accelerate the loan. Id., Ex. 30. The first mediation session was held on March 31, 2014.

In July 2014, BNYM appointed Northwest Trustee Services, Inc., ("NWTS") as the successor trustee. NWTS issued another Notice of Default, which caused plaintiffs' counsel to file another request for mediation. Despite the first and second mediation requests, NWTS took the next step toward foreclosure by issuing a Notice of Trustee's Sale on September 4, 2014. Id., Ex. 17. A week later, the mediator notified the parties that the second referral from the Department of Commerce was in error because the mediation process was still underway: the second request for mediation was withdrawn (Id., Ex. 30), and NWTS discontinued the trustee's sale (Id., Ex. 18).

Two more mediation sessions were held on March 10, 2015, and May 22, 2015. The mediator ultimately concluded that the Beneficiary had not participated in mediation in good faith under RCW 61.24.163(14) and (16). Id., Ex. 29. The mediator specifically found that:

> [T]he practice and behavior of the Beneficiary servicers (first Bank of America and subsequently Residential Credit Servicing) seem out of compliance with the provisions of the [Washington State Foreclosure Fairness Act]. There was considerable dysfunction with regard to instructions delivered to their respective counsel/representatives as well as a curious lack of responsiveness given the requests by their counsel for guidance and direction. There [w]as also multiple and confusing communication from the [Beneficiary]/servicers directly to the Borrowers. . . . In this particular case the counsels/representatives for the beneficiary sought to move the process along but were stymied in their efforts by their clients. . . . For a mediation process to extend for more than two years by virtue of two major transfers (one as to servicer and a second at a later date to a different counsel) by the Beneficiary has definitely disadvantaged the Borrower's right to a timely and fair hearing whilst in mediation . . . .

Id., Ex. 29.

On November 16, 2015, plaintiffs' counsel sent four separate letters to RCS seeking information, namely:

(1) the identity of the owner and servicer(s) of the loan, a copy of the loan documents, and information regarding whether the loan is subject to recourse or an indemnification agreement (Id., Ex. 31);

(2) an itemized cure amount and a pay off statement (Id., Ex. 33);

(3) information regarding available modification programs, borrower qualifications, and program requirements (Id., Ex. 35); and

(4) investor guidelines that applied to the loan (Id., Ex. 37).

RCS sent seven letters acknowledging receipt of plaintiffs' inquiries (Id., Exs. 38-42, 44, and 46) and two letters providing a partial substantive response regarding the identity of the servicer and the investor on the loan (Id., Exs. 43 and 45). On March 1, 2016, the loan was transferred to Ditech Financial LLC for servicing.

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 4

1    RCS seeks dismissal of plaintiffs' claims of quiet title, breach of the covenant of
2    good faith and fair dealing, negligence, intentional infliction of emotional distress, and
3    violations of the Washington Collection Agency Act, the Mortgage Loan Servicing Act,
4    the Washington Lending and Homeownership Act, and the Fair Debt Collections
5    Practices Act. The question for the Court in this context is whether the facts alleged in the
6    complaint or shown by the attached exhibits present a "plausible" ground for relief. Bell
7    Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).

**A. QUIET TITLE**

Plaintiffs allege that any action to foreclose their deed of trust is barred by the

applicable statute of limitations and that they are therefore entitled to quiet title under RCW 7.28.300. Dkt. # 1 at ¶ 111. RCS has no ownership or possessory interest in the property, however, nor does it claim such an interest. It is therefore not a proper defendant to a quiet title action. See Kobza v. Tripp, 105 Wn. App. 90, 95 (2001). Plaintiffs acknowledge that their quiet title claim against RCS fails as a matter of law, but argue that RCS should remain a defendant on this claim – even though there can be no liability – so that it can provide information regarding the amount of the debt that is no longer enforceable. Complete relief on the claim can be had without RCS' involvement, however. Nor is the potential need for discovery a justification for asserting a meritless claim against a particular defendant. Even if all claims against RCS are dismissed, plaintiffs may seek information from RCS under Rule 45.

**B. WASHINGTON COLLECTION AGENCIES ACT, RCW 19.16.010 *ET SEQ*.**

Plaintiffs allege that a letter RCS sent on September 21, 2013, failed to include information required by the Washington Collection Agencies Act ("WCAA"). The WCAA does not provide a private right of action, however. RCW 19.16.460; Connelly v. Puget Sound Collections, Inc., 16 Wn. App. 62, 64 n.1 (1976) ("Under the Collection Agencies Act, it appears that only the attorney general or the local prosecuting attorney 'may bring an action' to restrain a violation of the act."). Rather, "the remedy for a WCAA violation is through the [Consumer Protection Act]." Leach v. NCO Fin. Sys., Inc., 2015 WL 5675794, at *5 (W.D. Wash. Sept. 25, 2015). See RCW 19.16.440 (declaring violations of the WCAA to be unfair acts or practices or unfair methods of competition in the conduct of trade or commerce under the Consumer Protection Act).

Despite acknowledging that they are not the correct parties to pursue a claim under the WCAA, plaintiffs request that RCS' motion be denied and that the Court compel the

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 6

1  Director of the Department of Financial Institutions to pursue the claim (or to determine
2  whether plaintiffs should be deputized to pursue it on behalf of the Director). Plaintiffs
3  cite to Rule 21 as support for this extraordinary application, but this is not a matter of
4  misjoinder or nonjoinder. Plaintiffs do not have standing to assert the claim in the first
5  instance. The government's participation is not, therefore, necessary to the grant of
6  complete relief as to any claim that plaintiffs can pursue. Plaintiffs simply have no claim
7  under the WCAA. They may bring the facts of their case to the office of the state attorney
8  general or the Snohomish County prosecuting attorney in the hopes that one of them will
9  pursue a WCAA claim against RCS, but they cannot assert the government's WCAA
10 claim and then force it to participate.

**C. WASHINGTON MORTGAGE LOAN SERVICING ACT, RCW 19.148.010 *ET SEQ*.**

Plaintiffs allege that, when RCS took over the servicing of their loan in or around September 2013, it failed to provide timely notice of the transfer as required under RCW 19.148.030(2)(a)(ii). The Washington Mortgage Loan Servicing Act ("MLSA") requires new loan servicers to, among other things, provide contact information to the borrower at least thirty days prior to the date the first payment is due to the new servicing agent. A federal statute, the Real Estate Settlement Procedures Act ("RESPA"), covers the same topics, specifying both the timing and content of the notice that must be provided to a borrower when the servicing agent on the loan changes. 12 U.S.C. § 2605(c). RCS argues that the MLSA requirements are therefore preempted.

The fact that state and federal statutes touch on the same topic is not enough to warrant a finding of preemption. The intent of Congress and the practical impacts of the state law on the way Congress intended the federal statute to work must be considered when determining the preemptive scope of a federal statute. Dilts v. Penske Logistics,

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 7

LLC, 769 F.3d 637, 642 (9th Cir. 2014). RCS eschews this analysis, instead relying on Steadman v. Green Tree Serv., LLC, 2015 WL 2085565, at *13 (W.D. Wash. May 5, 2015), and Fenske-Buchanan v. Bank of Am. N.A., 2012 WL 1204930, at *5 (Apr. 11, 2012), as support for its preemption argument. Neither case is persuasive. In Steadman, the plaintiff conceded that his claim was preempted: the Honorable James L. Robart granted the motion for summary judgment as unopposed without evaluating the merits of the preemption argument. In Fenske-Buchanan, the Honorable Marsha J. Pechman found that the complaint did not adequately allege a failure to perform under the MLSA and granted leave to amend, warning plaintiff that the statute was narrow and that any violation alleged must concern actions the servicer took (or failed to take) in relation to a transfer of the servicing obligations. The preemptive scope of RESPA is set forth in the governing regulations, at 12 C.F.R. § 1024.33(d) and seemingly applies only to state laws "requiring notice to the borrower . . . at the time of transfer of servicing of the loan . . . ." RCS has not shown that plaintiffs' MLSA claim is implausible.[3]

**D. WASHINGTON MORTGAGE LENDING AND HOMEOWNERSHIP ACT, RCW 19.144.005 *ET SEQ*.**

This claim fails for the same reason as the WCAA claim failed: plaintiffs lack standing to enforce the provisions of the Mortgage Lending and Homeownership Act ("MLHA"). See RCW 19.144.120 ("The director or the director's designee may, at his or her discretion, take such actions as provided [in various titles and chapters] to enforce, investigate, or examine persons covered by this chapter."); Hummel v. Nw. Trustee Serv.,

---

[3] The deficiencies in RCS' argument were apparent from its moving papers: no argument from plaintiffs was necessary to realize that a proper preemption analysis had not been performed. Although the local rules of this district state that a failure to oppose a motion may be considered by the Court as an admission that the motion has merit, the Court will not blindly grant judgment where the moving party has obviously not borne its burden.

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 8

1  Inc., 180 F. Supp.3d 798, 805 (W.D. Wash. 2016). Plaintiffs may not initiate and/or
2  pursue a claim that belongs to someone else.

3  **E. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

4  Plaintiffs allege that RCS violated the covenant of good faith and fair dealing that
5  arose under the promissory note. Plaintiffs allege that RCS, acting as the lender's agent,
6  breached a duty owed by the lender. In the alternative, plaintiffs allege that RCS breached
7  its own duty of good faith and fair dealing when it violated state laws governing loan
8  servicers.

9  In every contract, Washington law imposes "an implied duty of good faith and fair
10 dealing" that "obligates the parties to cooperate with each other so that each may obtain
11 the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569 (1991).
12 Although RCS is not a party to the underlying contract, the contractual right to collect
13 payments from plaintiffs and to service the loan were, for a time, assigned to RCS. See
14 Steadman, 2015 WL 2085565, at *10. The covenant of good faith and fair dealing does
15 not, however, apply generally and cannot be used to convert statutory violations into a
16 contractual or quasi-contractual claim. The implied covenant "does not impose a free-
17 floating obligation of good faith on the parties," but rather "arises only in connection with
18 the terms" of their agreement. Rekhter v. State, 180 Wn.2d 102, 113 (2014). Absent some
19 indication that RCS acted in bad faith when performing under the note, there can be no
20 breach of the implied covenant. Plaintiffs did not respond to this argument and have not
21 identified a specific contractual term, obligation, or duty that RCS failed to perform in
22 good faith.

23 **F. NEGLIGENCE**

24 Plaintiffs' negligence claim is based in part on an alleged "general duty of care to

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 9

Plaintiffs in servicing their loan in such a way as to prevent foreclosure and prevent emotional distress." Dkt. # 1 at ¶ 169. There is no such duty under Washington law. RCS was bound to service plaintiffs' loan as set forth in the underlying note and the governing statutes. To impose upon a servicer an obligation to service the loan in a way that prevents default/foreclosure and the emotional distress that arises therefrom would give plaintiffs a benefit not specified in their bargain and would likely put the servicer in breach of its obligations to the lender. Plaintiffs have not identified, and the Court has not found, any Washington authority that supports the proposition that a servicer has a general duty to prevent foreclosure and emotional distress.

Plaintiffs also allege that RCS owed "a general duty to respond to Plaintiffs' submissions, to process said Plaintiffs' submissions, and to timely respond to Plaintiffs' submissions and other loan inquiries." Id. The "existence of a duty may be predicated upon statutory provisions or on common law principles," however (Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 49 (1996)), and plaintiffs have asserted statutory violations that have not yet been challenged. See Dkt. # 1 at ¶¶ 139-46 (Washington Consumer Loan Act claim), ¶¶ 147-62 (Washington Consumer Protection Act claim), and ¶¶ 188-206 (violation of 12 C.F.R. § 1024.41(c)(1)). In this respect, plaintiffs' negligence claim is based on duties established by statute that are separate and distinct from any contractual obligations RCS may have had.[4] If the jury finds that RCS breached those duties, it would be permitted to "weigh the statutory violation(s), along with other relevant factors, in reaching its ultimate determination of liability" on the negligence

---

[4] In Steadman, the plaintiff argued that the successor servicer was negligent in failing to honor agreements the borrower had negotiated with the prior servicer, but did not identify any statutory provisions or common law principles that imposed a duty to do so. 2015 WL 2085565, at *12.

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 10

1  claim. Doss v. ITT Rayonier, Inc., 60 Wn. App. 125, 129 (1991).

2      RCS argues, in one sentence, that plaintiffs' negligence claim is preempted in its
3  entirety by the Home Owner's Loan Act pursuant to 12 C.F.R. § 560.2(b). State tort laws
4  are generally excluded from that statute's preemptive provision, however (12 C.F.R.
5  § 560.2(c)(4)), and RCS makes no attempt to establish that it is a "federal savings
6  association" as that term is used in 12 C.F.R. § 560.2(a) and defined in 12 U.S.C.
7  § 1462(3).

**G. FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U.S.C. § 1692(F)**

    The Fair Debt Collections Practices Act ("FDCPA") precludes the use of unfair or unconscionable means in collecting debts, including "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest . . . ." 15 U.S.C. § 1692f(6). Plaintiffs allege that RCS' participation in the mediation process was a violation of this section because the notice of default issued on January 3, 2013 – which prompted the initial request for mediation – was unauthorized. Whatever defects may have plagued the January 3, 2013, notice of default, RCS did not become involved in the servicing of plaintiffs' loan until months later. Plaintiffs offer no theory under which RCS could be held liable for the statutory violations of other entities. With regards to RCS' participation in the mediation process, its participation was compelled by state law as part of an effort to halt the nonjudicial foreclosure process and avoid the dispossession or disablement of property. Participating in a statutorily-required mediation designed to avoid dispossession cannot fairly be

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 11

characterized as an action taken in pursuit of nonjudicial foreclosure.[5]

As presently alleged, plaintiffs' FDCPA claim fails as a matter of law. In their response memorandum, plaintiffs argue that RCS also violated the FDCPA when it had NWTS issue a second notice of default while the parties were in mediation. If plaintiffs intend to pursue this claim, they shall, within fourteen days of the date of this order, amend their complaint to give fair notice of the ground on which their FDCPA claim rests.

## H. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In order to state a claim for intentional infliction of emotional distress, plaintiff must allege (1) that defendant engaged in extreme and outrageous conduct, (2) that it intentionally or recklessly inflicted emotional distress, and (3) that plaintiff suffered severe emotional distress as a result of defendant's conduct. Reid v. Pierce County, 136 Wn.2d 195, 202 (1998). Although these elements involve fact questions that are generally reserved for the jury, the court must first determine whether reasonable minds could differ on whether the conduct was sufficiently extreme enough to result in liability. Robel v. Roundup Corp., 148 Wn.2d 35, 51 (2002).

Plaintiffs allege that (1) RCS failed to correct the outstanding loan balance and terms when it took over the servicing of the loan and realized that a prior loan modification was improper and/or ineffective, (2) RCS improperly initiated and pursued a nonjudicial foreclosure in 2014 while the parties were in mediation, and (3) RCS participated in the mediation in bad faith. Dkt. # 1 at ¶¶180-84. If the allegations are true,

---

[5] RCS' reliance on Ho v. ReconTrust Co., NA, 840 F.3d 618 (9th Cir. 2016), is misplaced. The Ninth Circuit determined that a mortgage servicer seeking to enforce a security interest is not a "debt collector" under the FDCPA unless it engages in the abusive practices set forth in § 1692f. Id. at 622. Plaintiffs have alleged one of those abusive practices.

ORDER GRANTING IN PART
RCS' MOTION TO DISMISS - 12

RCS' conduct may have violated state law and may result in an award of damages to plaintiffs, but there are no allegations of physical threats, emotional abuse, embarrassment/indignities aimed at plaintiff, or retaliatory motives. RCS' conduct, as alleged by plaintiffs, is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Birklid v. Boeing Co., 127 Wn.2d 853, 867 (1995) (quoting Grimsby v. Samson, 85 Wn.2d 52, 59 (1975)). The intentional infliction of emotional distress claim asserted against RCS must, therefore, be dismissed.

For all of the foregoing reasons, RCS' motion to dismiss (Dkt. # 15) is GRANTED in part and DENIED in part. Plaintiffs' quiet title, WCAA, MLHA, good faith and fair dealing, FDCPA, and emotional distress claims are DISMISSED as to this defendant. Plaintiffs' MSLA and negligence claims may proceed. Plaintiffs are granted leave to amend their FDCPA claim to assert a claim based on the issuance of a second notice of default while the parties were in mediation.

Dated this 25th day of January, 2017.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge