1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBIN D. HARTLEY, *et al.*,

        Plaintiffs,

    v.

BANK OF AMERICA, N.A., *et al.*,

        Defendants.

Case No.  C16-1640RSL

ORDER GRANTING IN PART
MOTION TO DISMISS

This matter comes before the Court on the "Partial Motion to Dismiss Plaintiffs'
Complaint Pursuant to FRCP 12(b)(6) by Defendants Ditech Financial, LLC, Bank of
America, N.A., and CWMBS, Inc., CHL Mortgage Pass-Through Trust 2006-8." Dkt.
# 19.[1] Plaintiffs filed this lawsuit against a number of lenders, loan servicers, trustees, and
other banking institutions alleging technical errors and illegal acts that delayed plaintiffs'
ability to modify their home loan and caused damage. Defendants seek dismissal of eight
of the claims asserted, arguing that they are not plausible based on the facts alleged. In
addition, they seek dismissal of all claims but one claim asserted against MERS. Having

---

[1] The motion is incorrectly titled. The moving parties are Ditech Financial, LLC,
Mortgage Electronic Registration Systems, Inc. ("MERS"), and CWMBS, Inc., CHL Mortgage
Pass-Through Trust 2006-08 ("CWMBS").

ORDER GRANTING IN PART
MOTION TO DISMISS - 1

1   reviewed the complaint, the attached exhibits, and the memoranda submitted by the

2   parties,[2] the Court finds as follows:

3                                    BACKGROUND

4          In March 2006, plaintiff Robin Hartley executed a promissory note for

5   $500,800.00, payable to the order of First Magnus Financial Corp. Decl. of Douglas A.

6   Johns (Dkt. # 9), Ex. 2.[3] The note was secured by a deed of trust on real property located

7   at 17134 111th Ave. NE, Bothell, Washington. Id., Ex. 3. The deed of trust lists First

8   Magnus as the lender, Stewart Title as the trustee, and Mortgage Electronic Registration

9   Systems, Inc. ("MERS") as both the beneficiary of the trust and the "nominee" for the

10  lender. Id.

11         Plaintiffs began having trouble making their mortgage payments in 2008. At the

12  time, Countrywide Home Loans Servicing LP was servicing plaintiffs' mortgage and

13  communicated with them regarding amounts past due and its intent to accelerate the loan.

14  Id., Exs. 4, 5, and 30. On or about April 29, 2009, Robin Hartley and BAC Home Loans

15  Servicing, LP (identifying itself as the lender) agreed to modify the loan, amending and

16  supplementing the original note and deed of trust to increase the principal balance to

17  $525,243.52 and to reduce the annual interest rate. Robin Hartley signed the Loan

18  Modification Agreement on May 19, 2009. Id., Ex. 6. The modification was not

19  countersigned until three years later, by which time BAC Home Loans Servicing, LP had

20  merged into Bank of America, N.A. Bank of America endorsed the agreement on

21  _____

22         [2] Plaintiffs' request to strike citations to cases that were not chosen for publication in the
    official reporter series is DENIED. Plaintiffs' requests to strike arguments found in reply are also
23  DENIED.

24         [3] At some unknown point in time, the note was endorsed over to Countrywide Bank,
    N.A., and then to Countrywide Home Loans, Inc. Id.
25

26  ORDER GRANTING IN PART
    MOTION TO DISMISS - 2

1  September 10, 2012. <u>Id.</u>, Ex. 7.

2       Plaintiffs made their last payment on the loan in July 2009.

3       In April 2012, MERS purportedly assigned its interests as beneficiary of the deed

4  of trust to Bank of New York Mellon, as trustee for the certificate holders of CWMBS.

5  (hereinafter, "CWMBS"). <u>Id.</u>, Ex. 9. In January 2013, a law firm acting on behalf of an

6  unidentified "Deed of Trust Beneficiary" notified plaintiffs that they were in default. The

7  notice identified CWMBS as the owner of the note and defendant Bank of America as the

8  servicer. Id., <u>Ex.</u> 10. Plaintiffs requested mediation, and the matter was referred by the

9  Washington Department of Commerce. Months passed while Bank of America decided

10  whether or not it wanted to pursue the notice of default, pursue mediation, and/or offer a

11  loan modification. <u>Id.</u>, Ex. 30. Whatever efforts Bank of America was prepared to make

12  were cut off when the servicing of the loan was transferred to RCS in or before

13  September 2013. <u>Id.</u>, Exs. 12, 13, and 30. RCS promptly notified plaintiffs that they were

14  in default and that RCS intended to accelerate the loan. <u>Id.</u>, Ex. 30. The first mediation

15  session was held on March 31, 2014.

16       In July 2014, CWMBS appointed Northwest Trustee Services, Inc., ("NWTS") as

17  the successor trustee. NWTS issued another Notice of Default, which caused plaintiffs'

18  counsel to file another request for mediation. Despite the first and second mediation

19  requests, NWTS took the next step toward foreclosure by issuing a Notice of Trustee's

20  Sale on September 4, 2014. <u>Id.</u>, Ex. 17. A week later, the mediator notified the parties that

21  the second referral from the Department of Commerce was in error because the mediation

22  process was still underway: the second request for mediation was withdrawn (<u>Id.</u>, Ex. 30),

23  and NWTS discontinued the trustee's sale (<u>Id.</u>, Ex. 18).

24       Two more mediation sessions were held on March 10, 2015, and May 22, 2015.

25

26  ORDER GRANTING IN PART
MOTION TO DISMISS - 3

1
2
3

The mediator ultimately concluded that the Beneficiary had not participated in mediation in good faith under RCW 61.24.163(14) and (16). Id., Ex. 29. The mediator specifically found that:

4
5
6
7
8
9
10
11
12
13

> [T]he practice and behavior of the Beneficiary servicers (first Bank of America and subsequently Residential Credit Servicing) seem out of compliance with the provisions of the [Washington State Foreclosure Fairness Act]. There was considerable dysfunction with regard to instructions delivered to their respective counsel/representatives as well as a curious lack of responsiveness given the requests by their counsel for guidance and direction. There [w]as also multiple and confusing communication from the [Beneficiary]/servicers directly to the Borrowers. . . . In this particular case the counsels/representatives for the beneficiary sought to move the process along but were stymied in their efforts by their clients. . . . For a mediation process to extend for more than two years by virtue of two major transfers (one as to servicer and a second at a later date to a different counsel) by the Beneficiary has definitely disadvantaged the Borrower's right to a timely and fair hearing whilst in mediation . . . .

14

Id., Ex. 29.

15
16

On November 16, 2015, plaintiffs' counsel sent four separate letters to RCS seeking information, namely:

17
18
19

(1) the identity of the owner and servicer(s) of the loan, a copy of the loan documents, and information regarding whether the loan is subject to recourse or an indemnification agreement (Id., Ex. 31);

20

(2) an itemized cure amount and a pay off statement (Id., Ex. 33);

21
22

(3) information regarding available modification programs, borrower qualifications, and program requirements (Id., Ex. 35); and

23

(4) investor guidelines that applied to the loan (Id., Ex. 37).

24

RCS sent seven letters acknowledging receipt of plaintiffs' inquiries (Id., Exs. 38-42, 44,

25
26

ORDER GRANTING IN PART
MOTION TO DISMISS - 4

and 46) and two letters providing a partial substantive response regarding the identity of the servicer and the investor on the loan (Id., Exs. 43 and 45). On March 1, 2016, the loan was transferred to defendant Ditech for servicing.

Defendants seek dismissal of plaintiffs' claims of quiet title, breach of the covenant of good faith and fair dealing, negligence, intentional infliction of emotional distress, and violations of the Mortgage Loan Servicing Act, the Washington Lending and Homeownership Act, the Fair Debt Collections Practices Act, and 12 C.F.R. § 1024.41(c)(1). The question for the Court in this context is whether the facts alleged in the complaint or shown by the attached exhibits present a "plausible" ground for relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

Somers v. Apple, Inc., 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded factual allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. In re Fitness Holdings Int'l, Inc., 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir.

2010).

**A. QUIET TITLE**

The statute of limitations on the enforcement of a promissory note is six years. RCW 4.16.040(1). Plaintiffs allege that their loan was accelerated on July 16, 2008, making the full amount of the debt due and owing at that time. Dkt. # 1 at ¶¶ 23-24. Arguing that defendants failed to foreclose the deed of trust within the applicable six year statute of limitations, plaintiffs seek to quiet title under RCW 7.28.300. Dkt. # 1 at ¶ 111. Defendants argue that "the purported acceleration of the loan in 2008 was rescinded by the 2009 loan modification, and [that] foreclosure commenced in 2013, within the six year period." Dkt. # 32 at 2.

Contrary to defendants' argument, plaintiffs have not admitted or alleged that their loan was modified in 2009. Rather, they identify the 2009 document as a "purported modification" and note "defects with respect to signatures on the Loan Modification Agreement and the Step Rate Loan Modification Addendum." Dkt. # 1 at ¶ 36. Plaintiffs specifically note that Tracy Hartley did not sign the document, that BAC Home Loans Servicing, LP, never signed the document, and that Bank of America, N.A., the successor of BAC Home Loans Servicing, LP, signed a separate document of unknown connection in September 2012. In the context of this motion to dismiss, defendants have not established the validity and enforceability of the loan modification agreement as a matter of law. Plaintiffs' allegation that the loan was accelerated is presumed to be true.

As for the notices of default issued from January 2013 to July 2014, their impact is not as sweeping as defendants suggest. Defendants rely on Edmundson v. Bank of Am., 194 Wn. App. 920, 930 (2016), to argue that initiation of non-judicial foreclosure proceedings under the Deed of Trust Act satisfies the statute of limitations. Defendants

ORDER GRANTING IN PART
MOTION TO DISMISS - 6

are essentially arguing that a lender can sleep on its contractual rights indefinitely as long as it issues a notice of default before the statute runs. That is not an accurate statement of Washington law. In Edmundson, the successor trustee initiated a non-judicial foreclosure proceeding by issuing a notice of default shortly before the limitations period was to expire. The lender pursued the process set forth in the Deed of Trust Act and had scheduled a trustee's sale when the borrowers filed suit to restrain the foreclosure. 194 Wn. App. at 923-24. In that context, the court found that the timely resort to the remedies in the Deed of Trust Act "is all that is required . . . ." 194 Wn. App. at 930.

Simply sending a notice through the mail does not satsify the statute of limitations, however. Like other types of actions aimed at resolving outstanding disputes, such efforts may toll the limitations period while they are on-going, but they are not a substitute for timely judicial action if an order of the court is ultimately needed. In Bingham v. Lechner, 111 Wn. App. 118, 127-31 (2002), for example, the court found that the initiation of a non-judicial foreclosure action tolled the statute of limitations, but only for the period of time in which the non-judicial efforts were pursued. When the lender failed to take the steps necessary to continue the sale, the statute of limitations clock restarted.

In this case, the allegations of the complaint support a plausible inference that the entire debt became due and owing in July 2008 and that the limitations period began to run at that time. The first notice of default was issued in January 2013. Four and a half years had elapsed at that point. The lender's representatives fired off additional Deed of Trust Act notices and the parties engaged in mediation until June 2015 when the mediator issued his report. This action was filed in October 2016, and there is no indication that defendants have cross-claimed for foreclosure or initiated another judicial or non-judicial foreclosure proceeding. Thus, one could plausibly argue that, even though the limitations

ORDER GRANTING IN PART
MOTION TO DISMISS - 7

period was tolled for almost two and a half years between January 2013 and June 2015,

the statute has run on any foreclosure attempts, and plaintiffs are entitled to quiet title.

**B. WASHINGTON MORTGAGE LOAN SERVICING ACT, RCW 19.148.010 *ET SEQ*.**

Plaintiffs allege that, when Ditech took over the servicing of their loan in or

around March 2016, it failed to provide timely notice of the transfer as required under

RCW 19.148.030(2)(a)(ii). The Washington Mortgage Loan Servicing Act ("MLSA")

requires new loan servicers to, among other things, provide contact information to the

borrower at least thirty days prior to the date the first payment is due to the new servicing

agent. "Any person injured by a violation of [the MLSA] may bring an action for actual

damages and reasonable attorney's fees and costs incurred in bringing the action." RCW

19.148.030(3). Defendants point out that plaintiffs have not identified any injury or

damages arising from the alleged failure to provide notice. Plaintiffs have not responded

or otherwise indicated that they can correct this deficiency.[4] Dismissal of the MLSA

claim is appropriate.

**C. WASHINGTON MORTGAGE LENDING AND HOMEOWNERSHIP ACT, RCW 19.144.005
*ET SEQ*.**

Plaintiffs allege that defendants violated the Washington Mortgage Lending and

Homeownership Act ("MLHA"). The MLHA does not provide a private right of action,

however. RCW 19.144.120 ("The director or the director's designee may, at his or her

discretion, take such actions as provided [in various titles and chapters] to enforce,

investigate, or examine persons covered by this chapter.); Hummel v. Nw. Trustee Serv.,

Inc., 180 F. Supp.3d 798, 805 (W.D. Wash. 2016).

---

[4] In their response memorandum, plaintiffs mention Fed. R. Civ. P. 21 in the context of "assorted legal claims." Dkt. # 31 at 10. If this section of the argument has anything to do with the MLSA claim, it is not apparent from the factual or legal analysis provided.

ORDER GRANTING IN PART
MOTION TO DISMISS - 8

1  Plaintiffs make no substantive argument regarding their standing to pursue a claim

2  under the MLHA, but request that the Court sever claims or deny the motion and compel

3  the Director of the Department of Financial Institutions to pursue the claim. Plaintiffs cite

4  to Rule 21 as support for this extraordinary application, but this is not a matter of

5  misjoinder or nonjoinder. Plaintiffs do not have standing to assert the claim in the first

6  instance. The government's participation is not, therefore, necessary to the grant of

7  complete relief as to any claim that plaintiffs can pursue. Plaintiffs simply have no claim

8  under the MLHA and may not initiate and/or pursue a claim that belongs to someone else.

9  **D. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

10  Plaintiffs allege that MERS and CWMBS violated the covenant of good faith and

11  fair dealing that arose under the promissory note. Plaintiffs specifically allege that MERS

12  and CWMBS, acting through their agents, hid problems with the non-judicial foreclosure

13  process and breached their duties to mediate in good faith under the Washington

14  Foreclosure Fairness Act.

15  In every contract, Washington law imposes "an implied duty of good faith and fair

16  dealing" that "obligates the parties to cooperate with each other so that each may obtain

17  the full benefit of performance." Badgett v. Sec. State Bank, 116 Wn.2d 563, 569 (1991).

18  The covenant of good faith and fair dealing does not, however, apply generally and

19  cannot be used to convert statutory violations into a contractual or quasi-contractual

20  claim. The implied covenant "does not impose a free-floating obligation of good faith on

21  the parties," but rather "arises only in connection with the terms" of their agreement.

22  Rekhter v. State, 180 Wn.2d 102, 113 (2014). Absent some indication that MERS and

23  CWMBS acted in bad faith when performing under the note, there can be no breach of the

24  implied covenant. Plaintiffs did not respond to this argument and have not identified a

25

26  ORDER GRANTING IN PART
MOTION TO DISMISS - 9

specific contractual term, obligation, or duty that MERS or CWMBS failed to perform in good faith.

**E. NEGLIGENCE**

Plaintiffs' negligence claim is based in part on an alleged "general duty of care to Plaintiffs in servicing their loan in such a way as to prevent foreclosure and prevent emotional distress." Dkt. # 1 at ¶ 169. There is no such duty under Washington law. Ditech was bound to service plaintiffs' loan as set forth in the underlying note and the governing statutes. To impose upon a servicer an obligation to service the loan in a way that prevents default/foreclosure and the emotional distress that arises therefrom would give plaintiffs a benefit not specified in their bargain and would likely put the servicer in breach of its obligations to the lender. Plaintiffs have not identified, and the Court has not found, any Washington authority that supports the proposition that a servicer has a general duty to prevent foreclosure and emotional distress.

Plaintiffs also allege that defendants owed "a general duty to respond to Plaintiffs' submissions, to process said Plaintiffs' submissions, and to timely respond to Plaintiffs' submissions and other loan inquiries." Id. The "existence of a duty may be predicated upon statutory provisions or on common law principles," however (Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 49 (1996)), and plaintiffs have asserted violations of the Washington Consumer Protection Act that have not yet been challenged. Dkt. # 1 at ¶¶ 147-62. In this respect, plaintiffs' negligence claim is based on duties established by statute that are separate and distinct from any contractual obligations defendants may have had.[5] If the jury finds that defendants breached those duties, it would be permitted to

---

[5] In Steadman, the plaintiff argued that the successor servicer was negligent in failing to honor agreements the borrower had negotiated with the prior servicer, but did not identify any

ORDER GRANTING IN PART
MOTION TO DISMISS - 10

1    "weigh the statutory violation(s), along with other relevant factors, in reaching its

2    ultimate determination of liability" on the negligence claim. <u>Doss v. ITT Rayonier, Inc.,</u>

3    60 Wn. App. 125, 129 (1991).

4    **F. FAIR DEBT COLLECTIONS PRACTICES ACT, 15 U.S.C. § 1692(F)**

5            The Fair Debt Collections Practices Act ("FDCPA") precludes the use of unfair or

6    unconscionable means in collecting debts, including "[t]aking or threatening to take any

7    non-judicial action to effect dispossession or disablement of property if . . . there is no

8    present right to possession of the property claimed as collateral through an enforceable

9    security interest . . . ." 15 U.S.C. § 1692f(6). Plaintiffs allege that CWMBS violated this

10   section when it directed a law firm to act as trustee and issue a notice of default on

11   January 3, 2013, without being duly appointed as trustee. Dkt. # 1 at ¶¶ 174-75.

12           CWMBS argues that the law firm, Bishop, White, Marshall & Weibel, P.S., was

13   acting as its agent, not as the trustee. The signature block on the letter supports this

14   contention, but the law firm identified itself in the text as the trustee and the entity to

15   contact in order to cure the default or pay off the loan. Dkt. # 1-10 at 45-46. Plaintiffs

16   have raised a plausible inference that the notice did not comply with the Deed of Trust

17   Act and that there was therefore no present right to possession of the property when

18   CWMBS initiated foreclosure proceedings.

19           CWMBS also argues that pursuing a non-judicial foreclosure under the Deed of

20   Trust Act is not, as a matter of law, debt collection subject to the FDCPA. CWMBS relies

21   on <u>Ho v. ReconTrust Co., N.A.,</u> 840 F.3d 618, 621 (9th Cir. 2016), for the proposition

22   that "actions taken to facilitate a non-judicial foreclosure, such as sending the notice of

23   _____

24   statutory provisions or common law principles that imposed a duty to do so. 2015 WL 2085565,
     at *12.

25

26   ORDER GRANTING IN PART
     MOTION TO DISMISS - 11

1    default and notice of sale, are not attempts to collect 'debt' as that term is defined by the

2    FDCPA." That does not, however, mean that the holder of a security interest, such as

3    CWMBS, can never violate the FDCPA. Foreclosure notices, such as the notice of default

4    at issue here, constitute "enforcement of security interests" under § 1692f(6) even if they

5    are not "debt collection" under § 1692a. Id. at 622. CWMBS is a debt collector for the

6    limited purposes of § 1692f(6), and that section can be used in this case "to protect a

7    consumer against the abusive practices of a security enforcer who does not fit the broader

8    definition of a debt collector." Id.

9    **G. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

10       In order to state a claim for intentional infliction of emotional distress, plaintiff

11   must allege (1) that defendant engaged in extreme and outrageous conduct, (2) that it

12   intentionally or recklessly inflicted emotional distress, and (3) that plaintiff suffered

13   severe emotional distress as a result of defendant's conduct. Reid v. Pierce County, 136

14   Wn.2d 195, 202 (1998). Although these elements involve fact questions that are generally

15   reserved for the jury, the court must first determine whether reasonable minds could differ

16   on whether the conduct was sufficiently extreme enough to result in liability. Robel v.

17   Roundup Corp., 148 Wn.2d 35, 51 (2002).

18       Plaintiffs allege that CWMBS, through its agents, (1) falsified loan modification

19   documents and falsely claimed arrearages as a result of the purported modification,

20   (2) improperly initiated and pursued non-judicial foreclosure in 2013 and 2014, and

21   (3) participated in mediation in bad faith. Dkt. # 1 at ¶¶180-84. If the allegations are true,

22   CWMBS' conduct may have violated state law and may result in an award of damages to

23   plaintiffs, but there are no allegations of physical threats, emotional abuse,

24   embarrassment/indignities aimed at plaintiff, or retaliatory motives. CWMBS' conduct, as

25

26   ORDER GRANTING IN PART
     MOTION TO DISMISS - 12

alleged by plaintiffs, is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Birklid v. Boeing Co., 127 Wn.2d 853, 867 (1995) (quoting Grimsby v. Samson, 85 Wn.2d 52, 59 (1975)). The intentional infliction of emotional distress claim asserted against CWMBS must, therefore, be dismissed.

**H. 12 C.F.R. § 1024.41(C)(1)**

In their complaint, plaintiffs do not identify which defendants violated 12 C.F.R. § 1024.41(c)(1), but the specific allegations run solely against defendant Residential Credit Solutions, Inc. ("RCS"). Dkt. # 1 at ¶¶ 191-200. Rather than explain how the facts alleged give rise to a plausible inference of liability against MERS, CWMBS, and/or Ditech, plaintiffs argue that the motion to dismiss should be denied because they might be able to discover facts which would justify holding CWMBS liable for RCS' conduct. If a complaint fails to provide sufficient facts to support a claim, the appropriate course is dismissal, not open-ended discovery in the hopes of finding evidence of wrong-doing. See Shroyer, 622 F.3d at 1041. This claim must be dismissed.

**I. MERS**

The parties agree that MERS is a proper and necessary defendant only as to plaintiffs' quiet title claim.

//

//

ORDER GRANTING IN PART
MOTION TO DISMISS - 13

For all of the foregoing reasons, defendants' motion to dismiss (Dkt. # 19) is GRANTED in part and DENIED in part. Plaintiffs' MLSA, MLHA, good faith and fair dealing, emotional distress, and 12 C.F.R. § 1024.41(c)(1) claims are DISMISSED as to MERS, CWMBS, and Ditech. Plaintiffs' quiet title claim may proceed against all three defendants. Plaintiffs' negligence and FDCPA claims may proceed against defendants CWMBS and Ditech.

Dated this 7th day of March, 2017.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
MOTION TO DISMISS - 14