The Hon. Judge Robert S. Lasnik

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| ROBIN D. HARTLEY and TRACY HARTLEY,<br><br>        Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA; N.A., CWMBS, INC; CHL MORTGAGE PASS-THROUGH TRUST 2006-8; RESIDENTIAL CREDIT SOLUTIONS, INC.; DITECH FINANCIAL LLC; FIRST MAGNUS FINANCIAL CORPORATION; NORTHWEST TRUSTEE SERVICES, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CORPORATE JOHN DOES 1-10,<br><br>        Defendants. | Case No:  16-01640-RSL<br><br>**JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS, INC. AND NORTHWEST TRUSTEE SERVICES, INC.**<br><br>**Noting Date: June 23, 2017** |

Defendants Residential Credit Solutions, Inc. ("RCS") and Northwest Trustee Services, Inc. ("NWTS") jointly move the Court for summary judgment on the remaining claims presented in Plaintiffs' Complaint.[1]  Those claims are: 1) violation of the Mortgage Loan Servicing Act (as to RCS only), 2) violation of the Consumer Loan Act (as to RCS only), 3) violation of the Consumer Protection Act, 4) violation of 12 C.F.R. 1024.41(c)(1), and 5) Negligence.[2]

---

[1] Some legal theories Plaintiffs have presented in this case are similar to averments found in *Schroeder v. Nationstar Mortg., Inc.*, Case No. 16-01561-RAJ (W.D. Wash.), Dkt. No. 1 (Complaint), filed by the same counsel and currently pending before the Hon. Judge Jones.

[2] All other claims against RCS and NWTS were dismissed pursuant to orders dated January 25, 2017.  Dkt. Nos. 35, 36.  Although Plaintiffs were granted leave to amend their FDCPA claim within 14 days of the Court's Order, they did not do so.  Dkt. No. 35 at 12:4, 13:13.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# I.   STATEMENT OF THE CASE

A.   <u>Mr. Hartley Obtains a Loan and Then Later Defaults.</u>

On or about March 3, 2006, Plaintiff Robin Hartley executed a promissory note (the "Note") evidencing a mortgage loan in the amount of $500,800.00.  Dec. of Metcalfe, Ex. 1.  In the Note, Mr. Hartley agreed that if he did "not pay the full amount of each monthly payment on the date it is due," he would be in default.  *Id.*, ¶ 6(B).

Mr. Hartley secured repayment of the Note with a recorded deed of trust (the "Deed of Trust") encumbering real property at 17134 111th Ave. N.E., Bothell, WA 98011 (the "Property") as collateral.  Dec. of Metcalfe, Ex. 2.  This Deed of Trust was also executed by Plaintiff Tracy Hartley.  *Id*. at 14.

On or about May 19, 2009, Mr. Hartley entered into a loan modification agreement.  Dec. of Metcalfe, Ex. 3.  For some reason, it was not duly executed until September 10, 2012.  *Id*.

On or about July 27, 2009, Plaintiffs made their last payment on the loan.  Dec. of Metcalfe, Ex. 4 (payment history); *see also* Compl. at 4 (admitting default).

On April 24, 2012, an Assignment of Deed of Trust in favor of The Bank of New York Mellon fka the Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2006-8, Mortgage Pass-Through Certificates Series 2006-8 (the "Loan Trust") was recorded with the King County Auditor.  Dec. of Metcalfe, Ex. 5.

On or about January 3, 2013, a Notice of Default was issued to Plaintiffs.  Dec. of Schaer, Ex. 1.

On or about January 25, 2013, Plaintiffs elected mediation with the Loan Trust through its servicing representative, Bank of America.  Dec. of Schaer, Ex. 2.

On or about September 14, 2013, Bank of America sent Mr. Hartley a letter requesting additional information to determine if the loan could qualify for (another) modification.  Dec. of Metcalfe, Ex. 6.

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 2 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

B.     <u>RCS Begins Servicing the Loan.</u>

On September 16, 2013, RCS acquired servicing rights for the loan.  Dec. of Metcalfe, ¶ 11; *see also* Ex. 7 (Power of Attorney for the Loan Trust in effect prior to servicing transfer).  At that time, the loan remained overdue for the August 2009 installment and over $149,000 was owed to cure the arrearage.  Dec. of Metcalfe, ¶ 12.

On or about September 25, 2013, RCS sent Mr. Hartley a Service-Transfer Notice.  Ex. 8. This letter included contact information for correspondence with RCS.  *Id.*

On or about November 13, 2013, Mr. Hartley advised RCS to direct further communications to his attorneys with Advantage Legal Group ("Advantage").  Dec. of Metcalfe, ¶ 15.

On or about November 25, 2013, RCS received financial documentation from Advantage, but it was missing bank statements, tax returns, and other materials necessary for a loan modification review.  Dec. of Metcalfe, ¶ 16.  On or about December 6, 2013, RCS supplied a list of these missing documents to Advantage.  Dec. of Metcalfe, ¶ 17.  Ex. 9.  On or about January 10, 2014, RCS advised Advantage that a 15-day deadline was being set for the missing documents.  Dec. of Metcalfe, Ex. 10.

On or about February 4, 2014, most of the requested documents were sent to RCS.  Dec. of Metcalfe, ¶ 19.  However, some bank statements omitted pages.  *Id.*  In addition, RCS determined that updated profit-and-loss statements and bank statements needed to be submitted, as the previous ones had grown stale for use in evaluating a potential loan modification.  *Id.*  The application was deemed incomplete.  *Id.*

On or about March 27, 2014, Mr. Hartley called RCS to advise the updated documents would be forthcoming.  *Id.*, ¶ 20.

On March 31, 2014, the first in-person mediation session was conducted.  Dec. of Metcalfe, ¶ 21; Ex. 21 (certification).  Advantage was informed that RCS did not have a profit-and-loss statement through March 2014 or the two most recent bank statements for Plaintiffs'

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 3 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    four accounts.  *Id*., ¶ 22.

2           On or about April 10, 2014, a profit-and-loss statement through December 2013 and

3    additional bank statements were provided to RCS; however, a profit-and-loss statement through

4    March 2014 remained missing, along with legible pages of the bank statements.  Dec. of

5    Metcalfe, ¶ 23.

6           On or about April 22 and 23, 2014, RCS issued letters denying Mr. Hartley a loan

7    modification because he did not supply all necessary documents.  Ex. 11.  One of RCS's letters

8    invited Mr. Hartley to apply for a short sale instead.  *Id*.

9           C.      NWTS Becomes the Successor Trustee.

10          On or about May 29, 2014, NWTS received a referral to open a file and handle the

11   Property's foreclosure.  Dec. of Gaynor, Ex. 1.

12          On or about June 13, 2014, a sworn declaration was executed, averring to the Loan

13   Trust's beneficiary status.  Dec. of Metcalfe, Ex. 12.  On or about June 27, 2014, NWTS

14   received this declaration.  Dec. of Gaynor, Ex. 2.

15          On July 3, 2014, an Appointment of Successor Trustee vesting NWTS with the powers of

16   the trustee under the Deed of Trust was recorded with the King County Auditor.  Dec. of Gaynor,

17   Ex. 3.

18          Also, on July 3, 2014, NWTS issued a new Notice of Default.  Dec. of Gaynor, Ex. 4.

19          On July 31, 2014, Advantage re-requested mediation on behalf of Mr. Hartley.  Dec. of

20   Metcalfe, Ex. 13.  Between August 1 and August 7, 2014, the Washington Department of

21   Commerce ("Commerce") inquired about this request as it contained a different beneficiary and

22   trustee than the January 2013 referral.  Dec. of Chambers, Ex. 2.  On August 13, 2014,

23   Advantage confirmed the new request was for the same ongoing foreclosure.  *Id*.

24          On August 13, 2014, the law firm of RCO Legal began representing the beneficiary in the

25   mediation process.  Dec. of Chambers, Ex. 1.

26          On August 14, 2014, Commerce informed Advantage that a new Notice of Default during

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 4 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  mediation was not contemplated in state law, and asked if Advantage intended to move forward

2  with the re-requested mediation.  Dec. of Chambers, Ex. 2.  In response, Advantage withdrew the

3  second request.  *Id*.  On August 27, 2014, a certificate was issued withdrawing the duplicative

4  mediation.  Dec. of Gaynor, Ex. 5.

5          On September 4, 2014, a Notice of Trustee's Sale was recorded with the County Auditor.

6  *Id.*, Ex. 6.

7          On September 8, 2014, Advantage contacted Commerce and NWTS about the sale

8  notice.  *Id.*, Ex. 7.  NWTS responded that they believed Mr. Hartley's mediation had been

9  withdrawn, but now realized it was not.  *Id.*, ¶ 13.  NWTS agreed to discontinue the sale, and

10  made an immediate request for the same to occur.  *Id.*

11          On or about September 12, 2014, the mediator clarified that Plaintiffs were referred to

12  statutory mediation again in error; this second request was withdrawn, causing a certificate to be

13  issued.  Dec. of Chambers, Ex. 3.  This confusion is what led to the Notice of Trustee's Sale

14  being recorded.  However, "the mediator verified that borrower's counsel had made the error,

15  and that the first referral [was] still active."  *Id*.

16          On September 24, 2014, a Notice of Discontinuance was recorded with the County

17  Auditor.  *Id.*, Ex. 8.

18          D.      Mediation Proceeds, With Repeated Requests for Documents From Mr. Hartley.

19          On September 30, 2014, RCO Legal asked Advantage for the status of documents

20  pertaining to the mediation.  Dec. of Chambers, ¶ 8.  On October 1, 2014, Advantage provided

21  an incomplete financial package, and RCO Legal notified Advantage of the same.  *Id.*, Ex. 4.

22          On or about October 6, 2014, RCS sent a letter to Advantage explaining the list of

23  required documents needed for a modification review.  Dec. of Metcalfe, Ex. 14.  On or about

24  October 17, 2014, Advantage supplied additional financial records for Mr. Hartley, but several

25  items were still missing.  Dec. of Metcalfe, ¶ 31.

26          On or about October 27, 2014, RCS sent another letter to Advantage explaining the list of

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 5 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    required documents needed for a modification review.  Dec. of Metcalfe, Ex. 15.

2        On November 11 and 26, 2014, RCO Legal requested that Advantage tender Mr.

3    Hartley's 2013 tax returns and September 2014 bank statements.  Dec. of Chambers, ¶ 10, Ex. 5.

4    On November 26, 2014, Advantage gave RCO Legal the bank statement, along with a letter

5    stating Mr. Hartley's 2013 taxes had not been filed.  *Id.*, Ex. 5.

6        On December 10, 2014, RCS reviewed Mr. Hartley's submissions, and determined that

7    multiple documents were still missing.  Dec. of Metcalfe, ¶ 33.  Additionally, updated financial

8    records would be necessary given the delay.  *Id*.  On December 16, 2014, RCO Legal asked

9    Advantage for 2013 tax returns, a 4506-T form, and two recent months of bank statements.  Dec.

10   of Chambers, ¶ 12.  On January 13 and February 6, 2015, RCO Legal asked Advantage for the

11   same documents, plus an updated profit-and-loss statement.  *Id*., ¶ 13.

12       On February 20, 2015, Advantage gave RCO Legal a 4506-T form, a profit-and-loss

13   statement, and some bank statements.  *Id*., ¶ 14.  On February 24, 2015, RCS reviewed the

14   documents and determined they remained incomplete (no 2013 tax returns or recent bank

15   statements).  Dec. of Metcalfe, ¶ 34.  On March 6, 2015, RCO Legal asked Advantage for Mr.

16   Hartley's 2013 tax returns and complete updated bank statements.  Dec. of Chambers, ¶ 15.

17       On March 9, 2015, Advantage gave RCO Legal a copy of Mr. Hartley's 2013 personal

18   tax return and some additional bank statements.  *Id*., ¶ 16.

19       On March 10, 2015, a second in-person mediation session occurred.  Dec. of Metcalfe, ¶

20   35; Dec. of Chambers, ¶ 17.  RCO Legal requested Mr. Hartley's 2013 business tax returns,

21   current bank statements, an updated profit-and-loss statement, and a letter explaining certain

22   large deposits to Mr. Hartley's bank account.  Dec. of Chambers, ¶ 18, Ex. 9.  On March 16 and

23   19, 2015, Advantage provided these documents, and RCS then deemed the package complete.

24   Dec. of Chambers, ¶ 19; Dec. of Metcalfe, ¶ 36.

25       E.    Mr. Hartley's Modification Request is Denied, and the Mediation Concludes.

26       On March 27, 2015, RCS denied a loan modification to Mr. Hartley based on insufficient

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 6 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

income.  Dec. of Metcalfe, Ex. 16.  RCS sent letters to Advantage stating this outcome.  *Id*.  On

March 31, 2015, another denial letter to Advantage was also issued.  Dec. of Metcalfe, Ex. 17.

On April 29, 2015, RCS received an appeal of its decision.  Dec. of Metcalfe, ¶ 39, Ex.

18.  Although the appeal was made beyond 30 days after denial, RCS responded on or about

May 4, 2015, and validated Mr. Hartley's income calculation as accurate.  Dec. of Metcalfe, ¶

40, Ex. 19.

On May 14, 2015, the mediator reminded the parties of an upcoming session; Advantage

responded by seeking an "emergency postponement" due to a calendaring error.  Dec. of

Chambers, Ex. 10.  The session was re-scheduled for one additional week.  *Id*.

On or about May 15, 2015, RCS sent another letter explaining its denial decision to

Advantage.  Dec. of Metcalfe, ¶ 41, Ex. 20.

On May 22, 2015, a third in-person mediation session occurred.  Dec. of Metcalfe, ¶ 42;

Dec. of Chambers, ¶ 22.  On June 4, 2015, the mediator certified the process, finding the

beneficiary in bad faith.  Dec. of Metcalfe, Ex. 21.  RCO Legal requested the mediator rescind

this outcome, and provided a chronology of events, but the mediator refused.  Dec. of Chambers,

¶ 23, Ex. 11.

F.       RCS Answers Multiple Inquiries, Then Ceases Acting as the Loan Servicer.

On or about June 18, 2015, the Washington Department of Financial Institutions ("DFI")

sent a letter to RCS, directing RCS to provide information about Mr. Hartley's loan.  Dec. of

Metcalfe, Ex. 22.  On or about June 24, 2015, RCS acknowledged this directive.  *Id.*, Ex. 23.  On

or about July 2, 2015, RCS responded to DFI.  *Id.,* Ex. 24.

On November 19, 2015, RCS informed Advantage that it would update Mr. Hartley's

records to reflect correspondence would be directed to new counsel at Smith & Johns.  *Id.*, Ex.

25.

On November 19 and 20, 2015, RCS received "request[s] for information" from Smith &

Johns.  *Id.*, Ex. 26.   On November 20 and November 23, 2015, RCS acknowledged these

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 7 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    requests.  *Id.*, Ex. 27.

2        On November 23, 2015 and December 1, 2015, RCS answered the Smith & Johns

3    requests.  *Id.*, Ex. 28.

4        On or about February 8, 2016, RCS sent Smith & Johns a "Notice of Servicing Transfer"

5    informing them that Ditech Financial LLC ("Ditech") would begin servicing the loan as of

6    March 1, 2016.  *Id.*, Ex. 29.

7                    **II.    ISSUE PRESENTED**

8        Whether the Court should grant summary judgment to RCS and NWTS on Plaintiffs'

9    remaining claims?

10                   **III.    EVIDENCE RELIED UPON**

11       This Motion for Summary Judgment is based upon:

12       1.    Any undisputed facts of which the Court may take judicial notice;

13       2.    The Declaration of Christy Metcalfe in support hereof, and exhibits attached

14   thereto;

15       3.    The Declaration of Tim Gaynor in support hereof, and exhibits attached thereto;

16       4.    The Declaration of Susana Chambers in support hereof, and exhibits attached

17   thereto;

18       5.    The Declaration of Counsel Joshua Schaer in support hereof, and exhibits

19   attached thereto;

20       6.    The Court's prior rulings dated January 25, 2017 (Dkt. Nos. 35, 36); and

21       7.    The authority and argument stated below in support of the instant briefing.

22                   **IV.    AUTHORITY AND ARGUMENT**

23   **A.    STANDARD FOR SUMMARY JUDGMENT**

24       Fed. R. Civ. P. 56(a) provides, in relevant part: "[a] party may move for summary

25   judgment, identifying each claim or defense -- or the part of each claim or defense -- on which

26   summary judgment is sought.  The court shall grant summary judgment if the movant shows that

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 8 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

2   matter of law."  *See also Celotex Corp. v. Catrett*, 417 U.S. 317, 323 (1986) ("One of the

3   principal purposes of the summary judgment rule is to isolate and dispose of factually

4   unsupported claims or defenses.").

5         Summary judgment is appropriate to avoid a useless, expensive, or time-consuming trial

6   when no genuine issue of material fact is presented.  *Pure Gold, Inc. v. Syntex (U.S.A.). Inc.*, 739

7   F.2d 624 (Fed. Cir. 1984).  A genuine issue does not exist where there is insufficient evidence

8   for a reasonable fact-finder to find for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*,

9   477 U.S. 242 (1986).  Hence, a non-moving party cannot rely on conclusory, unsupported

10  allegations to defeat summary judgment.  *Hansen v. U.S.*, 7 F.3d 137 (9th Cir. 1993).

11        In this case, the evidence does not show a genuine disputed issue of material fact that

12  would be sufficient to warrant trial.  RCS and NWTS should receive summary judgment.

### B.      MORTGAGE LOAN SERVICING ACT CLAIM

14        Plaintiffs contend that RCS violated the Washington Mortgage Loan Servicing Act

15  ("MLSA") because it did not "timely send [a] notification" concerning the loan's service-transfer

16  as required by law.  Compl., ¶¶ 131-132.

17        But RCS informed Mr. Hartley of the loan's service-transfer, both at the time RCS began

18  servicing *and* when RCS stopped servicing.  Dec. of Metcalfe, Exs. 8, 29.  These RESPA-

19  compliant notices contained the name, address, and telephone number for the correct entity to

20  contact before and after the transfers.  *Id*.  Plaintiffs' claim is simply unfounded.  There is no

21  MLSA violation.

### C.      CONSUMER LOAN ACT CLAIM

23        Plaintiffs next raise a claim against RCS under Washington's Consumer Loan Act

24  ("CLA"), based on RCW 31.04 *et seq.* and WAC 208-620-900.  Compl., ¶¶ 139-146.[3]

---

[3] Plaintiffs further link the purported CLA violation(s) to a *per se* unfair or deceptive trade practice under the
Consumer Protection Act ("CPA").  Compl., ¶ 146; *see also* RCW 31.04.208.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

Specifically, Plaintiffs allege a violation of RCW 31.04.290, relating to a borrower's requests for information.  Compl., ¶¶ 141, 143.  Plaintiffs also allege RCS failed to "continue processing the loan modification request" made when Bank of America serviced the loan.  Compl., ¶ 144, *citing* WAC 208-620-900.  Moreover, Plaintiffs allege RCS failed to "designate the borrower as a third-party intended beneficiary" when transferring loan servicing to Ditech.  Compl., ¶ 145.[4]

1.    RCW 31.04.290 Analysis.

Washington law requires that a loan servicer "must make reasonable attempts to comply with a borrower's request for information about the residential mortgage loan account and to respond to any dispute initiated by the borrower about the loan account."  RCW 31.04.290(1)(d).

A servicer must also "provide a written statement to the borrower within fifteen business days of receipt of a written request from the borrower. The *borrower's request must include* the name and account number, if any, of the borrower, a statement that the account is or may be in error, and sufficient detail regarding the information sought by the borrower to permit the servicer to comply."  RCW 31.04.290(1)(d)(ii) (emphasis added).  The response to a *proper* inquiry requires an explanation of default, balance due and escrow information, relevant information about the loan's "holder, owner, or assignee", and contact information for a representative to "answer questions and resolve disputes."  RCW 31.04.290(1)(d)(ii)(A-D).

Plaintiffs assert that RCS did not "respond to *some of* Plaintiffs' requests for information," notably omitting which requests are at issue.  Compl., ¶ 143 (emphasis added).  To the extent that Plaintiffs are perhaps referring to their counsel's letters that RCS received on November 19 and 20, 2015, those "requests" did not claim errors with the loan account.  Dec. of Metcalfe, Ex. 26.  Instead, they merely demanded the production of certain information, citing federal law.  *Id.*

Regardless of Smith & Johns' non-compliance with the CLA's threshold requirement to

---

[4] WAC 208-620-900(2)(a)(ii) is implicated in this allegation.

RCO
LEGAL, P.S.

1   declare the existence of an error, RCS acknowledged and swiftly answered their letters with all

2   information being sought.  Dec. of Metcalfe, Exs. 27, 28.  As a result, RCS did not violate RCW

3   31.04.290.  *Accord Eileen Frances Living Trust v. Bank of Am.*, 2017 WL 1706629, *3 (E.D.

4   Wash. May 2, 2017) ("the law does not require that all responses and explanations include the

5   level of detail that would satisfy every possible plaintiff.").

6                    2.     WAC 208-620-900 Analysis.

7          WAC 208-620-900 describes certain actions loan servicers must take with respect to

8   residential mortgage loans.  The power to enforce this Administrative Code derives from RCW

9   Ch. 43.320 and RCW 31.04.165, which grants the Director of DFI or a designated representative

10  authority to implement adopted rules.  *See also Deming v. First Franklin*, 2011 WL 5507210, *3

11  (W.D. Wash. Nov. 8, 2011), *aff'd* 528 Fed. Appx. 775 (9th Cir. 2013) (observing DFI "adopted

12  regulations to implement the CLA."); RCW 208-620-010 (defining "Director").  Indeed, the

13  Code vests authority to "enforce all laws and rules relating to… persons subject to this chapter"

14  strictly with the Director.  WAC 208-620-610(1).  Consequently, Plaintiffs lack standing to

15  enforce the Administrative Code sections referencing the CLA.

16         Additionally, Plaintiffs do not rely on RCW 31.04 *et seq.* concerning whether RCS failed

17  to "continue processing the loan modification request" they made to Bank of America, or

18  whether RCS did not make Mr. Hartley a beneficiary of transferring servicing to Ditech.

19  Compl., ¶ 141 (strictly relying on WAC 208-620-900).  Significantly, RCW 31.04 *et seq.* does

20  not appear to contain any reference to either the conduct of processing a prior loan modification

21  request, or making a homeowner into a "third party intended beneficiary" of a service-transfer.

22  Thus, Plaintiffs cannot invoke the CPA as applicable to provisions of the Administrative Code.

23  *Cf.* RCW 31.04.208 (regulating only "the practices governed by this chapter [*i.e.* RCW 31.04].").

24         But even on the merits, Plaintiffs' claim fails.  RCS had no obligation to modify the loan.

25  *See*, *e.g.*, *Deschaine v. IndyMac Mortg. Serv's.*, 617 Fed. Appx. 690, 692 (9th Cir. 2015).  But

26  after many months of efforts to ensure Mr. Hartley submitted a *complete* package, RCS reviewed

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 11 OF 24 – CASE NO. 16-01640-RSL

R C O
L E G A L, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   his modification request and determined that he was ineligible for that form of assistance.  Dec.

2   of Metcalfe, Exs. 16, 17.  RCS also explained the basis of its decision when Mr. Hartley

3   appealed.  *Id.*, Ex. 19.

4        Further, the mere assertion that Mr. Hartley was *not* an intended beneficiary of the

5   service-transfer to Ditech, to the extent that status matters, is nothing more than a conclusory

6   recitation of the Administrative Code and cannot serve as evidence of a genuine material fact in

7   dispute.  *See Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1078 (9th Cir. 2003)

8   ("Conclusory allegations unsupported by factual data cannot defeat summary judgment.").

9        In sum, RCS's conduct did not violate the Administrative Code.

10       **D.**    **CONSUMER PROTECTION ACT CLAIM**

11            1.    Elements Necessary to Prove a CPA Claim.

12       Conduct constituting CPA liability requires a plaintiff to prove:

13       (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3)
         affecting the public interest, (4) injury to a person's business or property, and (5)
14       causation [between the act and injury].

15   *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37 (2009), *citing Hangman Ridge Stables,*

16   *Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778 (1986).  The failure to meet any one of these

17   elements is fatal to the claim.  *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298 (2002).

18            2.    Unfair or Deceptive Act Element.

19       First, the CPA requires an act or practice with either: 1) "a capacity to deceive a

20   substantial portion of the public," or 2) that "the alleged act constitutes a per se unfair trade

21   practice."  *See Saunders v. Lloyd's of London*, 113 Wn.2d 330 (1989); *see also* RCW 19.86.093.

22   "Implicit in the definition of 'deceptive' under the CPA is the understanding that the practice

23   misleads or misrepresents something of material importance."  *Holiday Resort Comm. Ass'n v.*

24   *Echo Lake Assoc., LLC,* 134 Wn. App. 210 (2006); *see also Klem v. Wash. Mut. Bank*, 176

25   Wn.2d 771, 787 (2013), *citing* 15 U.S.C. § 45(n) ("The Washington legislature instructed courts

26   to be guided by federal law…" on the "unfair or deceptive" standard); *Michael v. Mosquera-*

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 12 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

*Lacy*, 165 Wn.2d 595 (2009) (to establish an unfair or deceptive act under the first prong test, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated act being repeated).

When considering if conduct was unfair or deceptive, courts routinely dismiss CPA claims predicated on Washington Deed of Trust Act ("DTA") violations where a plaintiff fails to demonstrate prejudice.  *See, e.g., Bavand v. OneWest Bank*, 587 Fed. Appx. 392 (9th Cir. Oct. 20, 2014); *Meyer v. U.S. Bank, N.A.*, 2015 WL 3609238, *5 (W.D. Wash. Jun. 9, 2015) ("[t]echnical violations of the DTA do not constitute unfair or deceptive acts or practices actionable under the CPA absent a showing of materiality or prejudice."); *Cagle v. Abacus Mortg., Inc.*, 2014 WL 4402136, *4 (W.D. Wash. Sept. 5, 2014) (dismissing CPA claim where Plaintiff did not plead prejudice); *Podbielancik v. LPP Mortg. Ltd. et al.*, 191 Wn. App. 662 (2015); *Merry v. NWTS*, 188 Wn. App. 174, 192 (2015) (rejecting liability for "formal, technical, nonprejudicial violations of the DTA"); *Steward v. Good,* 51 Wn. App. 509 (1988) (noting a "requirement that prejudice be established" where a "technical violation" of the DTA occurs and there was "no showing of harm to the debtor"); *Koegel v. Prudential Mut. Sav. Bank*, 51 Wn. App. 108, 112 (1988) (strict compliance with the DTA does not obviate a borrower's need to show prejudice).

### 3.   Public Interest Element.

Next, the inability to establish a public interest impact renders a plaintiff's CPA claim wholly unsubstantiated.  *See, e.g., Bavand v. OneWest Bank, FSB*, 196 Wn. App. 813 (2016) (a failure to establish facts that "have been replicated elsewhere" means "there is no showing that others have been or will be injured in the same fashion.  Bavand fails to show a public interest."); *Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 816 (2010), *citing Burns v. McClinton,* 135 Wn. App. 285, 290-91 (2006) (CPA claim defeated because of no evidence that Wells Fargo's actions had "the capacity to deceive a large portion of the public."); *Westview Investments, Ltd. v. U.S. Bank Nat. Ass'n*, 133 Wn. App. 835, 855 (2006).

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 13 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

"The public interest in a private dispute is not inherent." *Tran v. Bank of Am.*, 2013 WL 64770 (W.D. Wash. Jan. 4, 2013), *citing Hangman Ridge*, *supra.* at 790; *see also Segal Co. (Eastern States), Inc. v. Amazon.com*, 280 F.Supp.2d 1229, 1234 (W.D. Wash. 2003) (granting motion to dismiss CPA claim as allegation "on information and belief that defendant engages in a 'pattern and practice' of deceptive behavior" is insufficient to meet public interest requirement). As this Court stated in *McCrorey v. Fed. Nat. Mortg. Ass'n*, 2013 WL 681208 (W.D. Wash. Feb. 25, 2013), "[t]he purpose of the CPA is to protect consumers from harmful practices, which is why plaintiff must allege an actual or potential impact on the general public, not merely a private wrong."

### 4.   Causation and Injury Elements.

Finally, a plaintiff must establish that a defendant's acts caused injury to business or property. *Hangman Ridge*, *supra.* at 792; *see also Ambach v. French*, 167 Wn.2d 167 (2009); RCW 19.86.090 (an award under the CPA is strictly limited to damage "in... business or property...."). Lost wages or personal injuries, including pain and suffering, are not compensable. *See Wash. State Physicians Ins. Exch. & Ass'n v. Fisons,* 122 Wn.2d 299 (1993). In addition, the cost of litigating or conducting certain forms of "investigation" are not considered injuries either. *See*, *e.g.*, *Demopolis v. Galvin*, 57 Wn. App. 47 (1990); *Thurman v. Wells Fargo Home Mortg.*, 2013 WL 3977622 (W.D. Wash. Aug. 2, 2013).

In terms of causation, the Washington Supreme Court has found that if an expense would have been incurred regardless of whether a violation existed, causation is not established. *See Panag*, *supra.* at 64; *see also Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 82 (2007) (A plaintiff must prove that the "injury complained of... would not have happened" if not for defendant's acts); *Djigal v. Qual. Loan Serv. Corp.*, 2016 WL 6216252 (2016) (unpublished) (affirming summary judgment; no causal link to alleged misconduct).

### 5.   Plaintiff's Allegations.

Plaintiffs make a host of CPA-related allegations pertaining to both RCS and NWTS,

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

namely that: 1) RCS did not act in good faith during mediation (Compl., ¶ 149); 2) RCS instructed NWTS to issue foreclosure notices during mediation (Compl., ¶ 150); 3) RCS communicated information about a modification of the loan while knowing a modification was not properly executed (Compl., ¶ 151); 4) RCS stated no error existed on the loan account (Compl., ¶ 152); and 5) NWTS failed to adhere to a statutory good faith duty (Compl., ¶ 162).[5]

a.    Mediation Certification Allegation.

The DTA specifies that a bad faith mediation certificate can be issued against either the beneficiary or borrower.  RCW 61.24.163(14)&(15).[6]  The DTA also states that "[i]t is an unfair or deceptive act in trade or commerce and an unfair method of competition in violation of the… [CPA], for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163…."  RCW 61.24.135(2).  A plaintiff in such action must still demonstrate the public interest, injury, and causation elements.  *See*, *e.g.*, *Johnson v. JPMorgan Chase Bank N.A.*, 2015 WL 4743918, *9 (W.D. Wash. Aug. 11, 2015).

i.    RCW 61.24.135(2) Violates Due Process as it Improperly Vests a Non-Judicial Officer With the Power to Adjudicate Elements of Civil Liability Without Recourse.

A defendant in a civil lawsuit has a due process right to present defenses to liability.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Post v. City of Tacoma*, 167 Wn.2d 300, 313 (2009), *quoting Mathews v. Eldridge,* 424 U.S. 319, 333 (1976); *see also In re Moseley*, 34 Wn. App. 179, 184 (1983) (part of civil due process is a "meaningful hearing before a competent tribunal."); Wash. Const. art. I, § 3; U.S. Const. amend. XIV, § 1.

In the CPA context, whether a particular action gives rise to liability is a question of law.  *See*, *e.g.*, *Seattle Pump Co., Inc. v. Traders & Gen. Ins. Co.*, 93 Wn. App. 743, 752 (1999), *citing*

---

[5] Plaintiffs also allege that RCS incurred *per se* CPA liability by "violating the CLA as set out in preceding paragraphs."  Compl., ¶ 154.  This claim is subsumed under the CLA analyses above.  *See* Sect. C, *supra*.
[6] Although the "beneficiary" was the Loan Trust, all parties to the mediation recognized RCS was authorized to act in the beneficiary's stead.

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 15 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    *Leingang v. Pierce Cnty. Med. Bureau,* 131 Wn.2d 133 (1997) (action against insurer for breach

2    of good faith duty); *see also Keates v. City of Vancouver,* 73 Wn. App. 257, 265, *review denied,*

3    124 Wn.2d 1026 (1994) (legal duties are questions of law that trial courts must determine).

4           Under state law, it is the mediator's responsibility to solely determine "whether the

5    parties participated in the mediation in good faith."  RCW 61.24.163(12)(d).  But the DTA offers

6    no direction to mediators when making this crucial decision.

7           Rather, the Washington Department of Commerce ("Commerce") advises mediators that

8    they have open-ended "reasonable discretion to determine whether the actions of each party were

9    in substantial compliance with the requirements and the intent of the statute…."  Dec. of Schaer,

10   Ex. 3 (current Foreclosure Fairness Guidelines).  One of the "considerations" for determining

11   good faith is a non-sequitur of whether "both parties mediated in good faith."  *Id.*  The other

12   considerations are whether the parties reached a mutually acceptable agreement and whether

13   missing documentation may have compromised the result.  *Id.*  The certificate must then be

14   issued within seven business days after mediation concludes.  RCW 61.24.163(12).[7]

15          There are approximately 90 active mediators approved by Commerce.  Dec. of Schaer,

16   Ex. 4.  One individual may believe that a beneficiary's reasonable request for financial

17   documentation satisfies the "requirements and the intent of the statute," while another individual

18   may find otherwise.  Mediators are not judges who can rely on *stare decisis* or legal principles.

19   Consequently, arbitrary outcomes to statutory mediation become practically assured.

20          This reality is significant because a "bad faith" certification automatically establishes

21   multiple elements necessary to prove CPA liability without a court ruling.  RCW 61.24.135(2);

22   *see also Brown v. Wash. State Dep't of Commerce*, 184 Wn.2d 509, 518 (2015) ("After the close

23   of mediation, the mediator renders a decision with binding legal effects.").  No right of appeal

24   exists after this unrecorded process, and mediators – who are not arbitrators with adjudicative

25

26   _____
     [7] There is no formal opportunity to be heard before a mediator's administrative action is taken and the
     certificate is sent to state agencies for possible investigation.  Dec. of Schaer, Ex. 3 at 26.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

authority – are immune from responding to discovery or testifying.  RCW 61.24.169(4)(b).

Further, a beneficiary found in "bad faith" is *only* entitled to rebut that outcome "in any action to enjoin the foreclosure."  RCW 61.24.163(14)(a).  There are simply no legal means to overturn such finding in an action for damages, such as the one Plaintiffs bring here.  *Cf. Local Union No. 469, Int'l Ass'n of Firefighters, AFL-CIO v. City of Yakima*, 91 Wn.2d 101, 102 (1978) (city could appeal labor mediator's finding to state agency).

The Court should find that a *per se* CPA claim against RCS deprives it of due process when the mediator unilaterally and arbitrarily decided that RCS was at fault for delaying mediation, especially where the evidence shows that Mr. Hartley's counsel (Advantage) repeatedly failed to produce important records necessary for the modification review.

ii.   <u>Plaintiffs Cannot Demonstrate the Certification Was Likely to Impact the Public, or Caused Injury to Them.</u>

Even if the mediation certificate is left to stand, Plaintiffs' Complaint is devoid of any allegation that would satisfy the public interest, causation, and injury elements.

Plaintiffs state, in conclusory fashion, "RCS services a large number of mortgage loans in Washington State and employs substantially similar procedures with respect to all of the defaulted mortgage loans in Washington State."  Compl., ¶ 155.  Plaintiffs make no reference as to how the lengthy, unique circumstances giving rise to the mediation's outcome were possibly repeated elsewhere, or how RCS's "procedures" somehow led to delays in processing the modification request.

Likewise, Plaintiffs do not plead that RCS's conduct in mediation, or any actions leading to the certification thereof, caused them a compensable injury.  Given the absence of a single contention that RCS injured Plaintiffs, their CPA claim is not justiciable.[8]

---

[8] It is significant that Mr. Hartley's application was ultimately denied because of insufficient income.  Dec. of Metcalfe, Ex. 16.  Plaintiffs do not suggest that a faster review would have changed this fact.  There is no causal link between RCS's denial of a loan modification request and whatever unknown injury Plaintiffs believe they might have suffered.

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 17 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

b.      Issuing Foreclosure Notices Allegation.

Under RCW 61.24.163(16)(a), "[i]f a borrower has been referred to mediation before a notice of trustee sale has been recorded, a trustee may not record the notice of sale until the trustee receives the mediator's certification stating that the mediation has been completed." There is no prohibition, however, on issuing a new Notice of Default after mediation begins.  *Cf.* Compl., ¶ 150.

Here, a second Notice of Default led to Advantage re-requesting mediation.  Dec. of Metcalfe, Ex. 13.  This created confusion with Commerce.  Dec. of Chambers, Ex. 2.  On August 27, 2014, a mediation certificate was issued, but it appeared to NWTS that this certificate was terminating the mediation process as a whole.  Dec. of Chambers, ¶ 6; Dec. of Gaynor, ¶¶ 11-12. Thus, on September 4, 2014, a Notice of Trustee's Sale was recorded.  Dec. of Gaynor, Ex. 6. Four days later, NWTS was made aware that mediation remained active.  *Id.*, ¶¶ 13-14, Ex. 7. NWTS immediately took steps to discontinue the sale.  *Id.*, ¶ 14, Ex. 7.

Notably, Plaintiffs seek to blame *only* RCS for "instructing" NWTS to record a sale notice.  Compl., ¶ 150.  Yet, RCS gave no such instruction.  Dec. of Metcalfe, ¶ 29.  To the extent the Court might independently assess NWTS' conduct, it was the type of non-material, non-prejudicial error that case law recognizes cannot harm a borrower such as Mr. Hartley.  *See*, *e.g.*, *Podbielancik v. LPP Mortg. Ltd. et al.*, *supra*.; *Merry v. NWTS*, *supra*.  There is no allegation, let alone evidence, that recording a sale notice after confusion leading to a certification was likely to injure anyone, and it certainly did not injure Plaintiffs as the notice was discontinued and the mediation progressed unabated.

c.      Communicating Information Allegation.

The notion that RCS communicated something to either Mr. Hartley or third-parties about an improperly-executed loan modification is without factual support.  Compl., ¶ 151.  The modification with Bank of America was not duly executed until September 10, 2012, one year *before* RCS began servicing the loan.  *Compare* Dec. of Metcalfe, Exs. 3, 8.  Mr. Hartley was

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 18 OF 24 – CASE NO. 16-01640-RSL

R C O
L E G A L, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  then *denied* another modification due to insufficient income.  *Id.*, Ex. 16.  Plaintiffs lack

2  evidence that RCS somehow violated the CPA with respect to communications about a

3  modification.

4              d.        Claim of "No Error" Allegation.

5         Plaintiffs next assert that RCS improperly stated "no error had occurred in response to a

6  Notice of Error."  Compl., ¶ 152.  Plaintiffs boldly suggest "numerous errors had occurred."  *Id*.

7         On April 29, 2015, RCS received Mr. Hartley's appeal of the March 27, 2015

8  modification denial decision, which was also entitled "Notice of Error Under 12 C.F.R.

9  1024.35."  Dec. of Metcalfe, Ex. 18.  That Code section requires that a borrower's written

10  request must include "the name of the borrower, information that enables the servicer to identify

11  the borrower's mortgage loan account, and the error the borrower believes has occurred."  12

12  C.F.R. § 1024.35(a).

13         Mr. Hartley did not specify any "error."  Dec. of Metcalfe, Ex. 18.  In fact, the bulk of his

14  correspondence focused on appealing the modification denial.  *Id*. ("This letter is *also* to appeal

15  my non-approval.") (Emphasis added).  Even though Mr. Hartley waited longer than 30 days to

16  lodge an appeal, on May 4, 2015, RCS nonetheless responded and explained the decision.  Dec.

17  of Metcalfe, Ex. 19.  Additionally, RCS determined that no error had occurred.  *Id*.

18         Given Mr. Hartley's non-compliance with 12 C.F.R. § 1024.35(a), RCS cannot be held

19  liable for committing an unfair or deceptive act by virtue of its response.  Moreover, Plaintiffs

20  are unable to demonstrate how the other CPA elements are satisfied with respect to this claim.

21              e.        Trustee's Good Faith Duty Allegation.

22         Plaintiffs accuse NWTS of violating its statutory good faith duty "by attempting to

23  initiate the nonjudicial foreclosure process while foreclosure mediation was already underway."

24  Compl., ¶ 162.

25         Foreclosure had already been initiated, however, when the January 3, 2013 Notice of

26  Default was issued.  *See, e.g.*, *Campanella v. Rainier Nat. Bank*, 26 Wn. App. 418, 420 (1980)

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 19 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   (foreclosure starts "by the giving of a notice of default.").  Plaintiffs' claim is essentially a

2   reformulation of the RCW 61.24.163(16)(a) analysis addressed above.  *See* Sect. D(5)(b), *supra*.

3   (discussing the non-material, non-prejudicial issuance of a notice after Advantage's confusing re-

4   referral).  Even though the DTA is strictly construed, it does not mean strict liability.

5        Further, Plaintiffs' pre-emptive citation to *Lyons v. US Bank Nat. Ass'n*, 181 Wn.2d 775

6   (2014) is inapposite.  Compl., ¶ 162.  In *Lyons*, the Washington Supreme Court believed the

7   debtor's contention that she had contacted NWTS regarding a change in the beneficiary and her

8   acceptance of a loan modification prior to the sale date.  181 Wn.2d at 788.  The fact pattern

9   presented in this action is markedly different from *Lyons*.

10       Just like the other allegations constituting Plaintiffs' CPA claim, the proposition that

11  NWTS failed to act in good faith does not satisfy all necessary elements under *Hangman Ridge*.

12  **E.      12 C.F.R. § 1024.41(c)(1) CLAIM**

13       A servicer who receives a *complete* loss mitigation application[9] within 37 days prior to a

14  foreclosure sale shall, within 30 days, evaluate the borrower for all available options and provide

15  a written notice of the servicer's determination with the timeframe for appealing a denial.  12

16  C.F.R. § 1024.41(c)(1).  Servicers *may*, but have no obligation to, evaluate an incomplete

17  application.  12 C.F.R. § 1024.41(c)(2)(ii).

18       As a threshold matter, "[a] servicer is only required to comply with the requirements of

19  this section for a single complete loss mitigation application for a borrower's mortgage loan

20  account."  12 C.F.R. § 1024.41(i).  It is indisputable that Plaintiffs applied for – and obtained – a

21  modification of their loan terms with Bank of America long before RCS began servicing duties.

22  Dec. of Metcalfe, Ex. 3.  The single-application requirement pertains to the "loan account," not

23  the particular servicer conducting a review.  *See*, *e.g.*, *Wentzell v. JPMorgan Chase Bank, N.A.*,

---

9 "A complete loss mitigation application means an application in connection with which a servicer has
received all the information that the servicer requires from a borrower in evaluating applications for the loss
mitigation options available to the borrower.  A servicer shall exercise reasonable diligence in obtaining
documents and information to complete a loss mitigation application."  *Gelinas v. Bank of Am., N.A.*, 2017 WL
1153859, *6 (W.D. Wash. Mar. 28, 2017), *citing* 12 C.F.R. § 1024.41(b)(1).

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

627 F. App'x 314, n. 4 (5th Cir. 2015); *Trionfo v. Bank of Am., N.A.*, 2015 WL 5165415, *4 (D. Md. Sept. 2, 2015) (concluding that "the statute clearly only applies to those submitting applications for the first time."); *Bobbitt v. Wells Fargo Bank, N.A.*, 2015 WL 12777378 (S.D. Tex. May 7, 2015).[10]   As such, 12 C.F.R. § 1024.41(c)(1) was inapplicable to RCS's subsequent review of a new application.

Nonetheless, even turning to the claim's merits, Plaintiffs concede that their application to RCS was incomplete before 12 C.F.R. § 1024.41(c)(1) became effective, and RCS informed them of this deficiency.  Compl., ¶¶ 192, 194.  Plaintiffs believe they later tendered "those [missing] documents" to RCS "on or around January 27, 2014."  Compl., ¶ 195.  This statement is simply not true.

Rather, in December 2013, Plaintiffs were specifically told what documents were required for a modification review.  Dec. of Metcalfe, ¶ 17, Ex. 9.  Plaintiffs then disregarded the 15-day deadline for supplying those missing documents. *Id.*, Ex. 10.  Although some documents were eventually given to RCS in February 2014, updated profit-and-loss statements and bank statements were needed because the previous ones had grown stale for use, as a result of Plaintiffs' delay. *Id.*, ¶ 19.  Moreover, RCS was missing a profit-and-loss statement through March 2014, along with legible pages of the bank statements. *Id.*

After RCS denied Mr. Hartley's modification request because of incompleteness, Advantage tried again through mediation.  However, on October 1, 2014, Advantage provided another incomplete financial package, and they were notified of the same.  Dec. of Chambers, Ex. 4.  Not until March 16, 2015 – five months later – did Advantage finally turn over everything necessary to render Mr. Hartley's package complete.  Dec. of Metcalfe, ¶ 36.

At that point, RCS conducted its review in fewer than two weeks, well within the allowable period found in 12 C.F.R. § 1024.41(c)(1). *Cf.* Compl., ¶ 200 (claiming "no

---

[10] "Because the Bobbitts applied for and were given a loan modification by Wells Fargo in 2012, Wells Fargo is not required to comply with the requirements of… § 1024.41 in regards to the Bobbitts' June 6, 2014 loss mitigation application." *Id.* at *3.

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

evaluation… occurred.").  On March 27, 2015, RCS denied a loan modification to Mr. Hartley

based on insufficient income.  Dec. of Metcalfe, Ex. 16; *cf.* Compl., ¶ 197 (claiming the denial

was based on information "from late 2013.").[11]

The evidence therefore shows RCS complied with 12 C.F.R. § 1024.41(c)(1) and should

not be subject to trial on Plaintiffs' contrary allegation.

### F.   NEGLIGENCE CLAIM

Liability for Negligence requires "duty, breach, causation, and injury."  *Hartley v. State,*

103 Wn.2d 768, 777 (1985); *see also Ranger Ins. Co. v. Pierce Cnty.,* 164 Wn.2d 545, 552-53

(2008).  This Court has previously found that, apart from contractual obligations, "the existence

of a duty may be predicated upon statutory provisions or on common law principles."  Dkt. No.

35 (Order) at 10:12, *citing Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 49 (1996).

Plaintiffs' remaining claim, for the tort of Negligence, states that RCS had a duty to

"respond to Plaintiffs' submissions… and other loan inquiries."  Compl., ¶ 170.  Plaintiffs charge

that RCS breached these duties "by failing to comply with applicable state and federal law

regarding loan servicing and foreclosure proceedings."  *Id.*  Plaintiffs state they have "suffered

damages in an amount to be proven at trial."  *Id.*, ¶ 171.[12]

Contrary to these assertions, however, RCS did not have a legal duty to respond to

submissions or inquiries in the modification review process.  *See, e.g.*, *Klinger v. Wells Fargo*

*Bank,* 2010 WL 5138478, *4 (W.D. Wash. Dec. 9, 2010) (Plaintiffs failed to establish that Wells

Fargo owed them a duty of care regarding their mortgage); *see also Giles v. Gen. Motors*

*Acceptance Corp .,* 494 F.3d 865 (9th Cir. 2007) (dismissing negligence claim because "[a]bsent

other facts, such as a familial relationship, a lender or loan servicer generally owes no duty to a

[11] As mentioned in the factual summary above, on April 29, 2015, RCS received an appeal of its decision.
Although the appeal was made outside of a 30-day deadline, RCS responded anyway on May 4, 2015, and
explained the denial's basis.  Dec. of Metcalfe, Ex. 19.  Plaintiffs' claim for a violation of subsection (c)(1)
does not, and cannot, relate to the appeal process.
[12] The Court also previously found that Plaintiffs' claim of a duty to service the loan "in such a way as to
prevent foreclosure and prevent emotional distress" was not cognizable as a matter of law.  Dkt. No. 35
(Order) at 10:2-9.

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 22 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

borrower beyond contractual obligations."); *Ruiz v. Cent. Mortg. Co.*, 2015 WL 12683873, *11 (C.D. Cal. Apr. 2, 2015) ("The principle that a financial institution owes no duty to a borrower has been extended to loan servicers."); *McGee v. CitiMortgage,* 2013 WL 2405301, *6 (D. Nev. May 31, 2013) (dismissing negligence claim because a loan servicer owes the borrower no duty "other than any duties set forth in the deed of trust.").  In fact, "[a] growing number of courts… [have found] that a mortgage servicer does not owe borrowers a duty of care in processing a residential loan modification."  *Marques v. Wells Fargo Bank, N.A.*, 2016 WL 5942329, *7 (N.D. Cal. Oct. 13, 2016) (citing cases); *see also Anderson v. Deutsche Bank Nat. Trust Co. Americas*, 649 Fed. Appx. 550 (9th Cir. 2016)[13]; *Brown v. CitiMortgage, Inc.*, 2016 WL 7507762, *4 (C.D. Cal. Feb. 17, 2016).[14]

Insofar as whether Negligence might exist predicated on other statutory violations, as detailed in the sections above, Plaintiffs are unable to establish CLA, CPA, and § 1024.41(c)(1) liability.  *Accord* RCW 5.40.050 (generally abolishing the common law doctrine of Negligence *per se* for statutory violations); *see also Fullmer v. JPMorgan Chase Bank, NA*, 2010 WL 2511178, *7 (E.D. Cal. June 17, 2010), *citing Peay v. Midland Mortg. Co.,* 2010 WL 476677 (E.D. Cal. 2010) (no provision in RESPA creates a statutory duty of care owed by servicers). Plaintiffs' Negligence claim is untenable as a result.

//

//

//

//

---

[13] "[H]arm to the borrower as a result of an extended review period, while foreseeable, is neither certain nor primarily attributable to the lender's delay in the processing of the application. Rather, when, as here, 'the modification was necessary due to the borrower's inability to repay the loan, the borrower's harm, suffered from denial of a loan modification, [is] not... closely connected to the lender's conduct.' "  *Id.* at 552, *citing Lueras v. BAC Home Loans Serv., LP,* 221 Cal.App.4th 49 (2013).
[14] " ' 'Numerous cases have characterized a loan modification as a traditional money lending activity,' warranting application of the normal rule that lenders do not owe borrowers a duty of care.  Indeed, the weight of authority seems to be that accepting documents for a loan modification does not give rise to a duty of care." *Id*. at *4 (citations omitted).

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 23 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## V.     CONCLUSION

Through the briefing herein and supporting declarations with exhibits, RCS and NWTS have shown that they are entitled to summary judgment as a matter of law on each of Plaintiffs' remaining claims.  *See*, *e.g.*, *Thepvongsa v. Reg'l Tr. Serv's. Corp.*, 972 F.Supp.2d 1221, 1226 (W.D. Wash. 2013), *citing Hexcel Corp. v. Ineos Polymers, Inc.,* 681 F.3d 1055, 1059 (9th Cir. 2012).  RCS and NWTS respectfully request that the Court grant this Motion.

DATED this 31st day of May, 2017.

**RCO LEGAL, P.S.**


/s/ Joshua S. Schaer
Joshua S. Schaer, WSBA #31491
Attorneys for Defendant
Residential Credit Solutions, Inc. and
Northwest Trustee Services, Inc.

JOINT MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS,
INC. AND NORTHWEST TRUSTEE SERVICES, INC.
PAGE 24 OF 24 – CASE NO. 16-01640-RSL

RCO
LEGAL, P.S.

13555 SE 36th St., Ste. 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131