The Hon. Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT, WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBIN D. HARTLEY and TRACY HARTLEY,<br><br>        Plaintiffs,<br><br>     v.<br><br>BANK OF AMERICA, N.A.; CWMBS, INC., CHL MORTGAGE PASS-TROUGH TRUST 2006-8; RESIDENTIAL CREDIT SOLUTIONS, INC.; DITECT FINANCIAL LLC; FIRST MAGNUS FINANCIAL CORPORATION; NORTHWEST TRUSTEE SERVICES, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. CORPORATE JOHN DOES 1-10<br><br>        Defendants. | Case No. 2:16-cv-01640-RSL<br><br>RESPONSE OPPOSING JOINT MOTION FOR SUMMARY JUDGEMENT OF DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS, INC. AND NORTHWEST TRUSTEE SERVICES, INC.<br><br>Noting Date:  June 23, 2017 |
| THE BANK OF NEW YORK MELLON fka THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2006-8, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-8,<br><br>        Counterclaim Plaintiff<br><br>     v. | |

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 1

1
2  ROBIN D. HARTLEY, an individual;
   TRACY HARTLEY, an individual;
3
4          Counterclaim-defendants

## *RESPONSE TO JOINT MOTION FOR SUMMARY JUDGMENT*

5
6       Comes now Plaintiffs and Counterclaim-defendants, ROBIN D. HARTLEY, and TRACY

7  HARTLEY ("Plaintiffs" or "Counterclaim-defendants"), and submit their RESPONSE opposing

8  the joint motion for summary judgment of defendants Residential Credit Solutions, Inc.

9  (hereinafter "RCS") and Northwest Trustee Services, Inc. (hereinafter "NWTS") as follows:

10       Defendants' Joint Motion for Summary Judgment is premature, is not and cannot be

11  based upon undisputed material facts at this juncture, and is flawed upon the merits.

12  Accordingly, it must be denied in its entirety. We address first a number of issues related to the

13  summary judgment and flaws in the declarations (two of which should be stricken).

14
15  Subsequently, we address the legal arguments of the defendants.

16  ### *DEFENDANT'S MOTION IS PREMATURE, BASED SOLELY ON DECLARATIONS, SOME OF THE*

17  ### *DECLARATIONS ARE FLAWED, AND DISCOVERY COULD ELICIT ADDITIONAL INFORMATION*

18
19  ### *1. Summary Judgment: Technical Issues & Affidavits or Declarations*

20       Where record is lengthy, contradictory, and incomplete in terms of important matters of

21  proof, and issue of law involved is technical and complicated, summary judgment should be

22  denied.  *Savarin Corp. v. National Bank of Pakistan*, 290 F.Supp. 285 (S.D.N.Y. 1968),

23  *aff'd*, 447 F.2d 727.  In the instant case, the parties have only begun exchanging discovery

24  requests.  Defendants recognize that plaintiffs attached 500 pages of exhibits to their complaint.

25
26  This matter is highly technical and discovery does not close until October 2017.  Plaintiffs

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 2

should be entitled to cross examine defense witnesses like Metcalfe of RCS and Gaynor of NWTS—both of whom submitted conclusory declarations.

Moreover, the law is clear, affidavits or declarations alone and averments therein cannot provide the bases for granting summary judgment. *See, Moblen v. City of Alameda*, 2007 WL 1223752, at *2 (N.D.Cal. 2007)(treating affidavits or declaration as equivalent in explaining to a *pro se* party how to respond to a motion for summary judgment). An affidavit cannot be used to controvert a well-pleaded allegation of complaint in order to obtain summary judgment. *See Van Brode Milling Co v. Kellogg Co*, 132 F.Supp. 330 (D.C.Del. 1955) (holding that an affidavit cannot be used to controvert a well-pleaded allegation of complaint in order to obtain summary judgment); s*ee also Bryan v. Aetna Cas. & Sur. Co.*, 381 F.2d 872 (8th Cir. 1967)(finding that affidavits supporting a motion for summary judgment are to be carefully scrutinized; *Peterson v. U.S.*, 694 F.2d 943 (3d Cir. 1982) (stating that on motion for summary judgment, if a question of fact exists concerning the existence of a defense, the issue cannot be determined on affidavits). In the present case, the affidavits from defendants contain conclusory averments, like NWTS "believed" it could properly continue with foreclosure while mediation was pending. *See Gaynor Decl..,* ¶ 12 and *Metcalfe Decl..* (generally stating Hartley modification application was incomplete). Plaintiffs deny these averments and contend that the Hartleys' application was complete. Further, plaintiffs are entitled to conduct additional discovery to challenge and flesh out exactly what defendants knew or didn't know and when. Defendants fail to show no genuine issues of material fact exist, and their motion must be denied.

### 2. *Some of the Declarations Submitted by Defendants Are Flawed*

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 3

Further, as to affidavits, those submitted by the attorneys in this matter are also flawed and contain improper conclusory statements and as such must be ignored. As a threshold matter, in the affidavit of attorney Susana Chambers, nowhere does she state that her affidavit is made of her "personal knowledge." This is a threshold requirement for any affidavit or declaration submitted in federal court. As she did not affirmatively state her averments were based on her personal knowledge, her affidavit should be stricken in its entirety, and plaintiffs so move the court to strike. She does indicate where her knowledge is rooted, but does not state she makes her affidavit based upon her "personal knowledge." *See Chambers Aff.*, ¶ 3. An attorney's affirmation that is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment. *Little v. City of New York*, 487 F.Supp.2d 426 (S.D.N.Y. 2007). *See also Dannebrog Rederi AS v. M/V TRUE DREAM* , 428 F. Supp. 2d 1265, (S.D. Fla. 2005), *reconsideration den'd,* 2006 WL 1888700 (finding that summary judgment affidavit of plaintiffs' attorney was not made on personal knowledge, and, thus, affidavit was inadmissible in admiralty suit, where affidavit included statements that were argument, provided citations to the record and summaries of the record evidence, and concerned factual events that occurred in the case). Ms. Chambers' declaration fails to follow the threshold requirement that it be based on her "personal knowledge" and must therefore be ignored.

Also, it is unsound practice for defendant's counsel in an affidavit submitted in support of a motion for summary judgment to mingle alleged facts, comment, inference, argument and explanation. *Universal Film Exchanges, Inc. v. Walter Reade, Inc.*, 37 F.R.D. 4 (S.D.N.Y. 1965). Conclusory statements are insufficient to satisfy summary judgment requirements, especially where the statements pertain to information known only by an adverse interested

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

party. *Luckett v. Bethlehem Steel Corp.,* 618 F.2d 1373 (10th Cir. 1980). Conclusory allegations also do not establish an issue of fact for purposes of opposing motion for summary judgment. Bruce v. Martin-Marietta Corp., 544 F.2d 442 (10th Cir. 1976). In this matter, attorney Schaer states that he attaches "relevant portions" of Washington Department of Commerce Guidelines "relied upon" mediators in connection with the statutory mediation process. *See Schaer Decl.* ¶ 5. How does he know what the present mediator relied upon in issuing a certificate of bad faith against defendants? Defendants attempt to make a due process argument as to the propriety of the mediator's findings, yet they have not deposed the mediator. Further, the mediator refused to rescind his bad faith findings against defendants. *See Chambers Decl.*, ¶ 23. Defendants are not entitled to summary judgment on the issue of bad faith as the mediator is only on record affirming his bad faith findings. Plaintiffs are entitled to proceed with their case based on that affirmed finding.

Last, the declaration of Tim Gaynor filed in support of Defendants' motion is unsigned. As such, it must be ignored in its entirety. Plaintiffs hereby move the court to strike Gaynor's declaration in its entirety. A court cannot give credence to an **unsigned declaration**. *Peterson v. J.B. Hunt Transp., Inc.*, 133 Wash. App. 1043 (2006) (unpublished opinion)(emphasis added)*;see also, Local Union No. 490, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO v. Kirkhill Rubber Co.* 367 F.2d 956 (9th Cir. 1966) (holding affidavit not verified by affiant under penalties of perjury and not sworn to before an authorized officer was inadequate on motion for summary judgment). Gaynor's declaration is unsigned, and therefore unverified and unsworn. It must be disregarded in its entirety, and Defendants' motion is unsupported and must, therefore, be denied in its entirety.

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

### 3. *Discovery Could be a Good Thing (for Plaintiffs) as Summary Judgment is Inappropriate Without Discovery*

Courts generally disfavor summary judgment where relevant evidence remains to be discovered. *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. (Wash.), 1988). Only "[i]f further discovery *could not* elicit evidence that would raise genuine issues of material fact" is summary judgment appropriate. *Id.*(emphasis added). As yet, the deadline for the end of discovery has yet to be completed, nor has any deposition been taken or interrogatory been responded to. *Minute Order Setting Trial Date & Related Dates*, Dkt. # 40(setting the deadline for completion of discovery for October 8, 2017); *Edwards Decl.*, ¶[XXXX](stating that interrogatories from plaintiffs or other discovery has yet to be sent out). The Court should determine, as to all the Defendants' arguments for summary judgment, that further discovery likely will elicit evidence and that summary judgment is inappropriate at this time.

With the standard set out above in mind we address the arguments raised by the Defendants.

### DEFENDANTS' ARGUMENTS ARE ADDRESSED

### 1. *Plaintiffs' Consumer Loan Act (CLA) Claim Survives*

The Court should determine that discovery would reveal information that RCS did not make the Plaintiffs the intended beneficiary of a servicing transfer to Ditech or continue processing a loan modification application submitted to Bank of America. As the Declaration of Christy Metcalfe states, she is "an Assistant Vice-President with Residential Credit Solutions, Inc. ("RCS")" and she has "access to RCS's business records which are maintained in the ordinary course of regularly conducted business activity, including the business records for *and*

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 6

*relating to* a [promissory note secured by a deed of trust identifying the Hartley's property]."

*Metcalfe Decl.*, ¶¶ 1-2. While discovery has yet to be completed, it would appear that the section of the Joint Motion to Dismiss dealing with the consumer loan act only brief inserts factual matter related to the letters sent to RCS. Notably absent from the Declaration and its attached exhibits is any reference to a contract related to the transfer of servicing rights or related to the processing of a loan modification application in Bank of America's possession when the loan servicing was transferred to RCS. *See generally*, *Metcalfe Decl.* & Exhibits; *see*, *Complaint*, ¶¶ 141 & 144-145(claims related to related to servicing transfers). Naturally, Plaintiffs cannot produce records in the Defendants possession. But Defendants have not established that further discovery would not elicit further evidence; the Court should determine that summary judgment is inappropriate. Ms. Metcalfe could easily have attached the contract transferring the servicing rights to Ditech or the loan modification application in Bank of America's possession (or lack thereof) at the time of the servicing transfer to RCS.

The absence of presentation of factual material related to those transactions leaves the issues related to those still in dispute, as Defendants have not established facts showing an entitlement to summary judgment.

As for claims that the regulations promulgated under the CLA do no have a private right of action, because the CLA expressly authorizes a private right of action that satisfies some of the elements of a Consumer Protection Act (CPA) claim, the regulations likely do as well. In any case, if the regulations are not privately actionable directly, a violation of those regulations can still be used as evidence of negligence per RCW 5.40.050.

In any case, the regulations were promulgated by the director Washington's department of financial institutions pursuant to his or her authority as permitted by the legislature. RCW 31.04.165(1 The director has the power, and broad administrative discretion, to administer and interpret this chapter to facilitate the delivery of financial services to the citizens of this state by consumer loan companies, residential mortgage loan servicers, and mortgage loan originators

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

subject to this chapter. The director shall adopt all rules necessary to administer this chapter[…])) The Court should defer to the director's authority to administer and interpret RCW 31.04 *et seq.*: WAC 208-620 *et seq.* does not contain any expression that the director did not intend those provisions to be privately actionable.

### 2. *Plaintiffs' Consumer Protection Act (CPA) Claim Survives*

The Defendants correctly state the five basic elements of a Consumer Protection Act claim as laid out in *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins., Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). "To prevail on a CPA action, the plaintiff must show '(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.'" *Bain v. Metropolitan Mortg. Group, Inc.*, 175 Wn.2d 83, 115, 285 P.3d 34 (2012)(quoting *Hangman Ridge*, 105 Wn.2d at 780). Thereafter, and though the period for discovery has yet to be finished, Defendants lay incorrect case law with respect to a CPA jurisprudence and provide a number of arguments claiming that Plaintiffs cannot establish the elements. The Defendants do not challenge the occurring in trade or commerce element; that decision may be a laudable act of common sense for parties who cite *Bavand v. OneWest Bank, FSB*, 587 Fed.Appx 392 (2014)—a case that deals with plaintiffs who brought claims under the Deeds of Trust Act (DTA), not a CPA claim—as having some bearing on a CPA claim. *See*, *Joint Motion for Summary Judgment*, Dkt. 48, at pp. 13, ln. 6; *see also*, *Bavand*, 587 Fed.Appx. at 394(requiring a showing of prejudice to set aside a foreclosure sale conducted under the DTA and dismissing DTA based claims for damages in light of a recent Washington state court decision that held that DTA violations were not independently actionable, but could be forwarded under the CPA). Plaintiffs lay out the elements generally for a CPA claim, discuss the pertinent facts, and then discuss the constitutional challenges to the *per se* CPA claim against RCS that results from the mediator's certification that RCS lacked good faith.

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 8

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

As an initial matter, the "availability of redress for wrongs during nonjudicial foreclosure under the CPA is well supported [by Washington state] case law." *Lyons v. U.S. Bank Nat. Ass'n*, 181 Wn.2d 775, 785, 336 P.3d 1142 (2014). Plaintiffs have alleged a number of violations of the DTA by both the servicer, RCS, and at least one violation of the DTA by the trustee, NWTS.

### (A) Unfair or Deceptive Practice (this element is immaterial to the per se violation by RCS)

To prove that an act or practice is deceptive, neither intent nor actual deception is required. *Bain,* 175 Wn.2d at 115(citing *State v. Kaiser*, 161 Wash.App. 705, 719, 254 P.3d 850 (2011)). The question is whether the conduct has "the *capacity* to deceive a substantial portion of the public." *Hangman Ridge*, 105 Wn.2d at 785. Even accurate information may be deceptive " 'if there is a representation, omission or practice that is likely to mislead.'" *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 50, 204 P.3d 885 (2009)(quoting another case). But, the "universe of 'unfair' business practices is broad than, and encompasses, the universe of 'deceptive' business practices." *Id.* at 51. Thus, a deceptive act is necessarily unfair; but, an unfair act is not necessarily deceptive. *Kazman v. Land Title Co.*, 2012 WL 4336727 *4 (W.D. WA Sept. 21, 2012)(discussing *Panag*, 166 Wn.2d 27). Acts are "unfair" if they cause substantial injury that is "not outweighed by countervailing benefits to consumers or competitors, and not reasonably avoidable by the consumer." *Id.*(citing *Panag* 166 Wn.2d at 51); *accord*, *Schilling v. JPMorgan Chase & Co.*,  2017 WL 1479369 *11 (citing *Kazman,* 2012 WL 4336727 *4).  The Washington Supreme Court has suggested a defendant's act or practice might be "unfair" if it "offends public policy as established by 'statutes [or] the common law,' or is 'unethical, oppressive, or unscrupulous,' among other things. *Schilling*, 2017 WL 1479369 *11(citing *Klem v. Washi. Mut. Bank*, 176 Wn.2d 771, 785-87 (2013)).

As stated in the title of this section, this element should already be met as to RCS by virtue of the lack of good faith certification against RCS, as the Defendants' motion concedes.

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

RCW 61.24.135(2); *Joint Mot. for Summary Judgment*, pp. 15, Ln. 8-13. We, therefore, absent a ruling on the constitutionality of a foreclosure mediator's certification, address primarily the allegations against NWTS in this section.

NWTS' actions in seeking to foreclose on the property while mediation was ongoing offends well established public policies enumerated both by statute and the common law. As stated in the complaint, NWTS failed to "treat both sides equally" and to "act impartially" by failing to even engage in the minimal "investigat[ion]" of "possible issues"—namely, by failing to ask RCS whether a mediation was already ongoing. *Lyons v. U.S. Bank Nat. Ass'n.*, 181 Wn.2d 775, 787, 336 P.3d 1142. NWTS recorded a Notice of Trustee Sale while the mediation was ongoing in contravention of RCW 61.24.163(16)(a)(no recordation of notice of sale until receipt of the mediator's certification); *Johns Decl.* in Support of Complaint, Dkt # 1-9, Ex. 18 & 30.

### (B) Public Interest Impact

The business of debt collection affects the public interest, and collection agencies are subject to strict regulation to ensure they deal fairly and honestly with alleged debtors. *Panag*, 166 Wn.2d at 54.The strong public policy underlying state and federal law regulating the practice of debt collection also applies where collection practices do not fall within the laws' prohibitions. *Id.* Mere allegations that involve near violations of consumer related debt collection statutes (even if the statutes are not violated) impact the public interest. "[E]*ven if* the precise acts Plaintiffs allege in their complaint do not lead to exact violations of the CAA, DTA, or FDCPA, the allegations of the claims related to the "regulat[ion of] the practice of debt collection" are sufficient for the Court to find the public interest is impacted in the case. *Rose v. Bank of America, N.A.*, 2017 WL 1197822 *4 (E.D. Wash. Mar. 30, 2017). "[T]he public interest factor is met as a matter of law through the statutes under which Plaintiffs bring their claims." *Id.* Because RCS was alleged to have violated a number of debt collection statutes and

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 10

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

was functioning as both a consumer loan licensee and collection agency in Washington state, the public interest impact claim should be met as a matter of law. *See*, *Complaint*, ¶¶ 130-133(Mortgage Loan Servicing Act violations by RCS); ¶¶ 139-146; ¶¶ 172-177(Fair Debt Collections Practices Act—though dismissed as to RCS, there is no need for "exact violations," only claims related to the practice of debt collection); *Edwards Decl.*, Ex. 1 (print off from RCS website shows licenses in Washington relate to Collection Activities).

Additionally, both RCS and NWTS' conduct involves violations of the DTA, and thus the public interest impact should be met as a matter of law. RCS violated the DTA by instructing the trustee to issue of a Notice of Trustee Sale in violation of RCW 61.24.163(16)(a)(trustee may not record the notice of sale until the trustee receives the mediator's certification that the mediation is complete). NWTS violated the DTA by issuance of a Notice of Trustee Sale in violation of RCW 61.24.163(16)(a)(trustee may not record the notice of sale until the trustee receives the mediator's certification that the mediation is complete) while the mediation was ongoing. NWTS further violated the DTA by failing to conduct a cursory investigation as to whether a foreclosure could proceed when presumably it was in possession of financial records from the beneficiary, was aware of the pending mediation, and knew or should have known that the statute of limitations likely barred collection of the debt (at the very least barred collection of the debt without a ruling on whether facts tolled the statute of limitations). *See generally*, *Complaint*; *see*, *Complaint* ¶162(violation of good faith by attempting to initiate the nonjudicial foreclosure process when underway because if failed to treat both sides equally and investigate possible issues.)

However, because other issues sometimes unrelated to debt collection (i.e. related to foreclosure or technical aspects of a deed of trust or promissory note that may not violate a debt collection statute, sometimes Washington courts apply a different standard. For example, the *Trujillo v. Northwest Trustee Services, Inc*., court in addressing whether a nonjudicial foreclosure activity impacted the public interest states: In a private Consumer Protection Act (CPA) action, a

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 11

plaintiff can establish that the lawsuit would serve the public interest by showing a likelihood

that other plaintiffs have been or will be injured in the same fashion. West's RCWA 19.86.020.

*Trujillo*, 183 Wn.2d 820, 835, 355 P.3d 1100 (2015)(citation omitted). When assessing a

Consumer Protection Act (CPA) claim, a court considers four factors to assess the public interest

element when a complaint involves a private dispute: (1) whether defendant committed alleged

acts in course of his/her business; (2) whether defendant advertised to public in general; (3)

whether defendant actively solicited this particular plaintiff; and (4) whether plaintiff and

defendant have unequal bargaining positions. *Id.* at 836(citation omitted). The plaintiff need not

establish all of these factors, and none is dispositive. *Id.* In *Trujillo*, the Court found that the

plaintiffs allegations satisfied the second and third elements as the allegations related to a

foreclosure sale of the property and the plaintiffs merely state that other plaintiffs would likely

be affected. Both RCS and NWTS are (or were) regularly engaged in nonjudicial foreclosure

activity involving the potential sale of the property. The second and third elements likely are

met.

　　　　Likewise, technical violations of the deed of trust act in form, seem to resolve around the

number of others who may be affected by a regular business practice of the entity. *Bain*, 175

Wn.2d at 118(finding that the large volume of loans in which MERS was involved meant a

deceptive business practice involving naming MERS as beneficiary on Deeds of Trusts would

have a public impact). RCS serviced an incredible amount of consumer loans while it was still

servicing loans. For example, according to Form 10-K filed by American Capital Mortgage

Investment Corp. (RCS' parent company) filed for December 31, 2014, "[a]s of December 31,

2014, RCS managed a servicing portfolio of approximately 66,000 loans, representing almost

$14 billion in unpaid principal balance." *Edwards Decl.*, Ex. 2(excerpt of aforementioned Form

10-K). RCS was licensed in most of the states and territories of the United States of America.

*Edwards Decl.*, Ex. 1. RCS—having now discontinued its servicing operations—has had to

distribute its mortgage servicing rights to 17 other companies. *Edwards Decl.*, Ex. 3.  Plaintiffs

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

believe RCS' conduct was a regular business practice and that, given the large number of loans serviced, that other individuals may have been affected by the practice or could be affected by the practice. That said, discovery has yet to be completed so Plaintiffs would like to supplement (if necessary) after receiving responses to initial disclosures and other discovery requests.

As for NWTS, though discovery has yet to be completed, NWTS is believed to conduct nonjudicial foreclosures for a large number of properties in Washington state. According to an open government response from the Department of Commerce related to mediations between January 1, 2016, and Mar 31, 2016, of 391 completed foreclosure mediations for the time period, Northwest Trustee Services was the "TrusteeOrganizationName" (i.e. the trustee under the Deed of Trust) for 136. *Edwards Decl.*, Ex. 4(excerpted email from commerce indicating source of the report containing request and excerpted request showing the trustee). Essentially, for that quarter, NWTS was the trustee on 34% of the foreclosure mediations that closed. In fact, NWTS appears to service not only Washington, but much of the West Coast according to its own webpage. *Edwards Decl.*, Ex. 5. Apparently, the process used by NWTS is routine enough that NWTS has a fee schedule for the services it offers. *Id.* While, as stated before, no significant5 discovery has occurred yet, the large number of nonjudicial foreclosures in which NWTS is involved in this state and the fact that NWTS likely employs the same procedures for virtually all of its files (how a business could have, and why a business would have, a fee schedule for services with inconsistent procedures eludes common sense) should at least create a disputed issue of material fact as to whether the public interested is impacted by NWTS' actions.

    *(C)  Injury/causation*

The court in *Frias v. Asset Foreclosure Services, Inc.*, says it best:

> [T]he business and property injuries compensable under the CPA are relatively expansive.

> Because the CPA addresses "injuries" rather than "damages," quantifiable monetary loss is not required. *Panag,* 166 Wash.2d at 58, 204 P.3d 885. A CPA

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

plaintiff can establish injury based on unlawful debt collection practices even where there is no dispute as to the validity of the underlying debt. *Id.* at 55–56 & n. 13, 204 P.3d 885. [...] The injury element can be met even where the injury alleged is both minimal and temporary. *Mason v. Mortg. Am., Inc.,* 114 Wash.2d 842, 854, 792 P.2d 142 (1990).

[...] Where a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property within the meaning of the CPA. *Cf. Klem v. Wash. Mut. Bank,* 176 Wash.2d 771, 795, 295 P.3d 1179 (2013) (holding a CPA injury was pleaded where a falsely backdated notarization allowed a foreclosure sale to happen earlier than it could have otherwise, cutting short the borrower's chance to close sale on the real property with a private purchaser for a higher price).

*Frias*, 181 Wn.2d 412, 430-432, 334 P.3d 529 (2014).

Plaintiffs received a bad faith certification in mediation and did not receive any loan modification as a result of Plaintiffs attempts at foreclosure mediation. *Edwards Decl.*, Ex. 6-9(foreclosure mediation certification and denial letters). In July, Plaintiffs applied through the mediation chain for a loan modification; but rather than communicate with regard to the loan modification application, RCS and NWTS chose to pursue attempts to foreclose on the property. Smith Decl., Ex 8-12; *See also*, *Johns Decl.* in Support of Complaint, Dkt. 1-9, ¶16-19, Ex. 15-18(July 3, 2014 Notice of Default; September 4, 2014, Notice of Trustee Sale; September 24, 2014, Discontinuance of Trustee Sale). In the meantime, Plaintiffs were not reviewed for loan modification for the July 1, 2014, submission. *Smith Decl.*, Ex. 12. All of this occurred during a Foreclosure Fairness Act mediation in which the parties are supposed to openly communicate to avoid foreclosure whenever possible. Laws of 2011 Ch. 58.

Worse, as RCS' conduct (and NWTS' part in contributing to delays in the foreclosure mediation process by failing to do even a cursory investigation as to whether the file was already in mediation) resulted in a bad faith certification against it and others, Plaintiffs on multiple occasions called and visited the offices of their former and current counsel. *Hartley Decl.* ¶2-4. 17134 111th AVE NE, Bothell, WA 98011 (Hartley Residence) to 12207 NE 8th Street, Bellevue,

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 14

WA 98005 (Offices of Advantage Legal Group. is a distance of approximately 11-12.4 miles depending on route. *Edwards Decl.*, Ex. 10. On at least one occasion plaintiffs made the trip to the offices of Advantage Legal Group to attend a foreclosure mediation in the conference room there. *Edwards Decl.*, Ex. 6. On two other occasions, the Hartley's made a trip from their home to the King County Dispute Resolution Center at 4649 Sunnyside Ave N. #520, Seattle, WA 98103. *Edwards Decl.*, Ex. 6 & 11. Plaintiffs have suffered small amounts of damages related to dispelling their confusion and travel to do so as a result of RCS' and NWTS' conduct toward plaintiffs, the Defendants have not shown that there is no dispute of material fact as to whether the Plaintiffs have been injured as a result of the Defendants actions. The Court should determine that Plaintiffs' CPA claims survive this motion for summary judgment.

### *(4) The Due Process challenge to the certain provisions of Foreclosure Fairness Act is procedurally deficient under Federal Law. And… Due Process was not violated, because Washington's Administrative Procedures Act applies to a foreclosure mediation certification and RCS failed to appeal the bad faith certification with an administrative law judge or the Department of Commerce.*

Federal Rule of Civil Procedure (FRCP) 5.1 sets out the procedure for making a constitutional challenge to a statute in federal court. A party that files a written motion drawing into question the constitutionality of a state statute must promptly file "a notice of constitutional question stating the question and identifying the paper that raises it, if" a state statute is questioned and the parties do not include the state. FRCP 5.1(a)(1)(B). *And*, the party must "serve the notice and paper" on "that state attorney general if a state statute is questioned—either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose." FRCP 5.1(a)(2). After those notice and service procedures are followed "the court must, under 28 U.S.C. § 2403, certify to the appropriate attorney general that a statute has been questioned." FRCP 5.1(b).

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 15

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

In filing the joint motion for summary judgment, neither RCS nor NWTS noticed or filed a notice of constitutional question identifying the joint motion for summary judgment—or, at the very least, such a notice is not ascertainable from the docket report. FRCP 5.1(a)(1)(B); *Edwards Decl.*, Ex. 2. The joint motion for summary judgment (i.e. the paper, not the notice) likewise was not necessarily served on the state attorney general by "certified or registered mail," but would rather appear to be served by "U.S. Mail, postage prepaid." FRCP 5.1(a)(2); *Edwards Decl.*, Ex. 2. Given the lack of information as to whether the "US Mail, Postage Prepaid" was registered or certified mail, the Court should conclude that—to the extent that RCS and NWTS attempted to follow FRCP 5.1—the Defendants failed to properly serve the Washington state attorney general in accordance of FRCP 5.1. In short., the Defendants have failed to properly notice the constitutional questions challenging the state statute pursuant to FRCP 5.1(a)(1)(B) and failed to properly serve the joint motion for summary judgment pursuant to FRCP 5.1(a)(2). Defendants do not seek to join parties that likely have an interest in a constitutional challenge to provisions of the statute in question. The Court, therefore, should disregard the constitutional arguments in the joint motion for summary judgment,

However, even if the Court considers those arguments, the Court should determine that Defendant's constitutional challenge to the provisions of the Foreclosure Fairness Act that allow a bad faith certification to satisfy some of the elements of a Consumer Protection Act claim is meritless. The constitutional challenge is meritless: Washington's Administrative Procedures Act lays out the means to challenge or appeal a mediator's certification with the Department of Commerce. Due Process is not violated where a party simply elects not to avail itself of the process allowed under state law for appealing an agency decision.

*(A) Washington's Administrative Procedures Act lays out how to appeal a decision by a foreclosure mediator*

Except for enumerated exceptions, Washington's Administrative Procedures Act (WAPA) applies to all state government agencies in Washington—the Department of Commerce

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

1 (the regulatory body who oversees the foreclosure fairness act mediations) is not excepted. RCW

2 34.05.030(enumerating exceptions to the Administrative Procedures Act); *see*, RCW

3 61.24.005(defining the Department under the Deeds of Trust Act as Department of Commerce).

4 Under RCW 34.05.020: "No subsequent legislation shall be held to supersede or modify the

5 provisions of this chapter or its applicability to any agency except to the extent that such

6 legislation do so expressly." Nowhere in the Deeds of Trust Act (DTA) does it mention that

7 WAPA is inapplicable or otherwise modified by any provision of the DTA. *See,* RCW 61.24, *et*

8 *seq.*

9        RCW 34.05.010(1) defines "Adjudicative proceeding" to "mean[…] a proceeding before

10 an agency in which an opportunity for hearing before that agency is required by statute or

11 constitutional right before or after the entry of an order by the agency." Pursuant to RCW

12 34.05.010(11)(a) an "'Order,' without further qualification, means a written statement of

13 particular applicability that finally determines the legal rights, duties, privileges, immunities, or

14 other legal interests of specific person or persons."

15        The Court should determine that a certification likely falls within the definition of an

16 "Order" under WAPA.  Plaintiffs do not dispute that a foreclosure certification affects the legal

17 rights of the parties to mediation under certain circumstances. *See*, *e.g.* RCW 61.24.163(13)-

18 (15)(detailing some of the legal effects of a certification generally, and certifications in which

19 beneficiary failed to act in good faith and in which the borrower failed to act in good faith); *see*

20 *also*, RCW 61.24.135(2)(violation of duty of good faith is a violation of the consumer protection

21 act). *See*, *Edwards Decl.*, Ex. 3(foreclosure mediation certification); RCW 34.05.010(11)(a).

22        The Court should determine that a foreclosure mediation session is an adjudicative

23 proceeding resulting in an order. The Department of Commerce is exclusively responsible for

24 training foreclosure mediators and keeping a list of approved foreclosure mediators, mediators

25 that are generally immune from suit as a result of any proceedings or initial acts, and the

26 foreclosure mediations are intended to allow the parties to address the issues of foreclosure *See*,

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 17

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

RCW 61.24.169(1)-(3); RCW 61.24.169(4)(emphasis added); RCW 61.24.163(9).. It would, therefore, seem likely that a foreclosure mediation session is a proceeding, resulting in an order (as discussed in the previous paragraph) and that it occurs before a state agency in which parties are permitted to be heard. *See,* RCW 31.05.010(1); *see,* RCW 34.05.010(1); RCW 61.24.008(when a borrower may be referred to mediation); RCW 61.24.165(applicability of RCW 61.24.163 to certain kinds of deeds of trusts and otherwise); *see also,* RCW 34.04.010(1).

Accordingly, only a cursory review of WAPA demonstrates that the Defendant's due process concerns in the joint motion for summary judgment are patently meritless. WAPA sets out extensively the procedures for a direct review of an agency order in state court. *See, e.g.,* RCW 34.05.510 – RCW 34.05.598(Judicial review and civil enforcement). All that is needed to review agency proceedings is to pay a $200 filing fee and to petition the superior court of Thurston County. *See,* RCW 34.05.514; *see also,* RCW 36.18.020. There is no indication in the record that RCS attempted to so do. *See generally,* Dkt.

The Court should not countenance the due process arguments of the Defendant, when the Defendant elected not to avail itself of its right to process.

### (5) Plaintiffs' 12 C.F.R. 1024.41(c)(1) claim survives

#### (A) One Complete Review After the Effective Date is Required

Virtually every district court that has considered the issue has determined that a servicer must comply with the dictates of 12 C.F.R. 1024.41 at least once after the effective date of the regulation. *See, e.g., Schroeder v. Nationstar Mortgage LLC*, 16-1561-RAJ, 2017 WL 2483248 (W.D. WA, June 8, 2017)(summarizing authorities). Defendants arguments that compliance with 12 C.F.R. 1024.41(c)(1) is obviated by a loan modification application before the effective date should be determined by the Court to be meritless.

#### (B) When a loss mitigation application straddles the effective date of the regulation

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 18

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

While most authorities and the recent ruling from this Circuit discussed *supra* agree that a loan servicer must comply with the dictates 12 C.F.R. 1024.41 at least once after the January 10, 2014, Effective Date of Regulation X, regardless of whether the borrower applied for loan modification prior to that date, the circumstances of around the loss mitigation application submitted around January 27, 2014, are less clear as the application straddles the effective date of the regulation.

Authorities appear to be split as to whether a loan modification application that straddles the Effective Date of the regulations (i.e. one submitted prior to the effective date, but completed after the Effective Date) necessitates a servicer's compliance with the regulations. The two primary cases are *Cooper v. Fay Servicing LLC*, 115 F.Supp.3d 900 (S.D. Ohio 2015) and *Lage,* 145 F.Supp.3d 1172 (S.D. Fla 2015). In *Cooper*, the Court found that the Plaintiffs RESPA claims would not be dismissed after analyzing and approving of two cases in which the loan modification application review straddled the effective date of the regulation. 115 F.Supp.3d at 906. In discussing the first of those two cases, *White v. Wells Fargo Bank*, No. 2:14-cv-12505, 2015 WL 1842811, at *3 *E.D.Mich. April 22, 2015 , the *Cooper* court approved of that *White* courts' determination that dismissal was inappropriate where the *White* court "decline[d] to find that RESPA [was] inapplicable in a case where the loan modification request was made prior to the effective date and the foreclosure took place after the effective date." *Id.* While admittedly the application in *Cooper* was submitted after the Effective Date of the regulation, *Id.* at 907, the Court should find the *Cooper* courts approval of the *White* court persuasive and more consonant with the remedial nature of Regulation X. *See, e.g.*, *McLean v. GMAC Mortgage Corp.,* 398 F. App'x 467, 471 (11th Cir.2010)(RESPA is a consumer protection statute, and is to be "construed liberally in order to best serve Congress' intent.")

In *Lage*, the court specifically states the opposite with respect to a loss mitigation application that straddles the Effective Date of the regulation. That court held that a borrower who submitted an application prior to the effective date that thereafter became complete was

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

barred as an application received prior to the Effective date of the regulation did not activate the requirements of Regulation X. *Id.* at 1188.

Plaintiffs contend that the *Cooper* court's interpretation of Regulation X and review of the statutory history with respect to loss mitigation applications that were submitted before January 10, 2014, and completed afterwards is correct. As the *Cooper* court discusses, the non-binding consumer guide published by the Consumer Financial Protection Bureau states:

> These new rules [Regulation X] became effective on January 10, 2014. Any borrower who files a complete loss mitigation application on or after January 10, 2014, […] The servicer must conduct this evaluation even if the borrower previously filed for, was granted, or was denied a loss mitigation plan before January 10, 2014.

*Cooper*, 115 F.Supp.3d at 906 (citation and emphasis omitted). While the *Cooper* court was dealing with a situation in which there was no question that the application was submitted after the effective date of the regulation, it is more consistent with the language of the non-binding consumer guide and with the remedial nature of the statute that a servicer's need to follow the dictates of Regulation X is triggered when "a complete loss mitigation application" is filed after the effective date of Regulation X. *Id.* Emphasis on *complete*. Therefore, the Court should determine that the *Cooper* decision is in line with the purpose of the statute in determining that an application completed after the effective date of the regulation should be reviewed within 30 days.

To this end, the Plaintiffs submitted a complete loss mitigation application to Residential Credit Solutions, Inc. on January 27, 2017. *See, Smith Decl.*, Ex. 1 & 2. The requested documents appear to have been provided in line with the language in the request letter dated in 2013 and arguably reaffirmed in a nonspecific letter dated January 10, 2014, the first effective day of Regulation X. *See, Smith Decl.*, Ex. 2; *Metcalfe Decl.*, ¶¶ 17-18, Ex. 9 & 10. The January 10, 2014, letter included a 15 day deadline to submit requested documents or the loan

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 20

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

modification application, *Metcalfe Decl.*, ¶18, Ex. 10. At this time the loan and the RCS and the Plaintiffs were already in foreclosure mediation. *Johns Decl.*, Dkt. 1-9, ¶12. Because of the foreclosure mediation, the documents RCS was permitted to require were dictated by state law and the instructions of the mediator, not purely by RCS. RCW 61.24.163(4)(setting out the basic documents required of borrowers); RCW 61.24.163(7)(a) & (10)(allowing the mediator to schedule phone consultations and otherwise to ensure the necessary documents are produced; allowing the mediator to certify the mediation in bad faith in a party fails "to provide the documentation required before mediation or pursuant to the mediator's instructions.") No documentation stating the mediator's instructions with regards to the loan modification application begun in late 2013 and completed on January 27, 2014 has been provided to the Court. *See generally,* Dkt.

As such, the Court should determine that having provided the documents RCS claims to have "required," Plaintiffs completed their application and the review should have been completed within 30 days. It would not be until the March 31, 2014 mediation session that Plaintiffs were informed that the application would result in a denial of a request for loan modification. *Smith Decl.*, Ex. 5; *Johns Decl.*, Ex. 29. By April 22, 2014, RCS would generate a letter denying the loan modification for a failure to provide "required documents," even though those documents were provided on January 27, 2014. *Smith Decl.*, Ex. 3. Some courts have concluded that provision of the requested documents is sufficient to facially complete a package and to trigger the 30 day review requirements, even if later communications from a servicer claim the package is incomplete. *See, e.g., Smith v. Specialized Loan Servicing*, 2017 WL 1711283 (S.D. Cal, May 3, 2017)(loan modification application was "complete" on provision of requested documents despite later communications to the contrary and multiple other loan modification applications). The Court should determine that the package was complete on January 27, 2014, and that the April 22, 2014 decision letter stating that the package was incomplete falls outside the 30 day timeline for review required by Regulation X. As a result of

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

all of RCS conduct in loan modification, Mr. Hartley experienced stress. Hartley Decl., ¶5. As a result, Plaintiffs' Regulation X claim should survive this motion for summary judgment.

> (C) *If the January 27, 2014, loan modification is determined to fall outside the scope of Regulation X, the next "complete" application received by Residential Credit Services, Inc. was supplied on July 1, 2014.*

While the Court should determine that the loan modification application begun before the effective date of Regulation X, but completed after the effective date of the regulation was "complete," in the event that the Court does not make that determination, Plaintiffs ask leave under Rule 15 to amend their Complaint to reflect the events that occurred around the submission of Plaintiffs next "complete" application for loss mitigation assistance on July 1, 2014. The basic facts as to the July 1, 2014 submission follow in the next paragraph.

On July 1, 2014, Plaintiffs submitted a loan modification application to RCS, through RCS's then-counsel via an electronic mail submission to the foreclosure mediation email chain. *Smith Decl.*, Ex. 8. The submission included the basic request for mortgage assistance forms and other documents generally included in a loan modification application. *Smith Decl.*, Ex. 9-11; ¶17. From the date of the July 1, 2014, submission, and through the following months, no communication from RCS or its counsel with regards to the loan modification application was received. *Smith Decl.*, 12.

On receipt of a loan modification application, a loan servicer is required to notify a borrower whether additional information is needed to complete a review of the loss mitigation application or to treat the application as complete and evaluate the application. *Paz v. Seterus, Inc*, 2015 WL 4389521 *3 (S.D. Fla July 16, 2015). A failure by the servicer to "determine whether an application was approved, denied, complete or incomplete" for months after the application was received results in the application being "considered 'facially complete' pursuant to § 1024.41. *Id.*(citing to § 1024.41(c)(2)(iv)); *accord, Jones v. Select Portfolio Servicing, Inc.*,

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 22

2016 WL 6581279 *7 (N.D. Tex, October 12, 2016)(allegations that a loan servicer failed to notify a borrower that his loan modification was complete or incomplete were sufficiently plead to allow plaintiff's claim that plaintiff had submitted a "complete" application to survive a 12(b)(6) motion.)

As stated previously, should the Court determine that the application completed on January 27, 2014, was not a "first loan modification application" to which Regulation X applies, Plaintiffs ask leave to amend their complaint to state any Regulation X claims that may arise from the application submitted on July 1, 2014. RCS failed to provide any notice as to whether loan modification application was complete or incomplete, and as such the application, which included all of the documents typically included in a loan modification application, should be considered complete. *Paz,* 2015 WL 4389521 *3; *Jones*, 2016 WL 6581279 *7; Decl of Smith., Ex. 8-12, ¶ 12 & 17.

In short, should the Court determine that the loan modification application completed on January 27, 2014, did not trigger the requirements of Regulation X as the application was initially begun in 2013, the Court should grant Plaintiffs leave to amend their claims to include the loan modification application submitted on July 1, 2014.

### Negligence

As an initial matter, the Court should determine that issues related to whether there is a disputed material fact with respect to Plaintiffs negligence claim were already resolved by the Court in its rulings on the Motions to Dismiss filed by RCS and NWTS. Specifically, the Court denied Plaintiffs claims with respect to a general duty of care owed to Plaintiffs (though Plaintiffs did not forward this), but stated that Plaintiffs claims based on duties predicated on statutory provisions survived, stating in one decision: "[i]f the jury finds that RCS breached those duties [Washington Consumer Loan Act, Washington Consumer Protection Act, and 12 C.F.R. 1024.41(c)(1) claims with respect to RCS], it would be permitted to "weigh the statutory violation(s), along with other relevant factors, in reaching its ultimate determination of liability"

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 23

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

1  on the negligence claim. *Hartley v. Bank of America*, 16-1640-RSL, Dkt. 35, 2017 WL 368274

2  *5 (W.D. WA, Jan 25, 2017)(citing *Doss v. ITT Rayonier, Inc.*, 60 Wn. App. 125, 129 (1991)).

3  This Court already determined that a jury makes a "find[ing]" as to whether the statutes were

4  violated and "weigh[s] the statutory violations" in "reaching its ultimate determination of

5  liability," *id.*; therefore, it seems that Plaintiffs have already successfully introduced a disputed

6  issue of material fact under Washington negligence law, as the jury is the one entitled to "find"

7  whether the statutes were violated in determining negligence liability. We address the

8  Defendants' arguments regardless.

9      Again, Defendants rely primarily on legal authority addressing negligence under the laws

10  of other States (generally California). Plaintiffs, therefore, again move to strike legal authority

11  dealing with the negligence laws of States other than Washington as simply "beyond the scope"

12  of negligence claims dealing with Washington law. *See, Leming v. US West Information Systems,*

13  *Inc.*, Civ. No. 86-433 FR, 1986 WL 13362 (D. Oregon, July 14, 1986)(denying a motion to strike

14  on punitive damages and refusing to address arguments "beyond the scope" of the "present

15  motion.")

16      In substance, the Defendants only appear to devote a small amount of time to Plaintiffs

17  negligence claims and offer no factual support beyond citations to the complaint. *See, Joint Mot.*

18  *for Summary Judgment*, Dkt. 48, at 23:11. Defendants claim that inability to establish CLA,

19  CPA, and 1024.41(c)(1) liability discussed in other sections means that a violation of duties

20  imposed by those statutes cannot be used as evidence of negligence. Defendants apparently

21  concede that the negligence claims against NWTS premised on the MLHA claim and the Deeds

22  of Trust Act violation survive. *See, Hartley v. Bank of America*, 16-1640, 2017, Dkt. # 36, 16

23  WL 378538 *3 (W.D. WA Jan 25, 2017).

24      With respect the negligence claims premised on the statutes discussed by Defendants,

25  Defendants erroneously state that a failure to establish liability under those statutes means the

26  Defendants have not "breached a duty imposed by statute, ordinance or administrative rule." *See,*

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 24

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

RCW 5.40.050. However, it is for a jury to decide whether a particular "statute, ordinance, or administrative rule" is violated and whether the violation constitutes "evidence of negligence." *Id.*; *Petit v. Dwoskin*, 116 Wash.App. 466, 475, 68 P.3d 1088 (2003)(dealing with jury instructions on code violations in the construction of a deck). Plaintiffs are not required to establish liability for those claims, only the existence of a legal duty: "Once the issue of legal duty is determined, it is the function of the trier of fact to decide whether the particular harm should have been anticipated and wehtehr reasonable care was taken to protect against the harm." *Degel v. Majestic Mobile Manor, Inc.*, 129 Wash.2d 43, 54, 914 P.3d 726 (1996)(citations omitted).

As the Defendants do not challenge the fact that those statutes impose legal duties on the Defendants, only whether Plaintiffs can establish liability for violations of those statutes, the Court should determine that the question of the violations of duties imposed by statute now should be determined by the trier of fact. *Id.* Plaintiffs' *Complaint* alleges numerous violations of statutory law. *Complaint* ¶114-129 (violations of Washington's Collection Agency's Act); *Complaint* ¶ 130-133 (violations of Washington's Mortgage Loan Servicing Act); *Complaint* ¶ 134-138 (violation of Washington's Lending and Home Ownership Act); and more with respect to RCS; *Complaint* ¶ 134-138 (violation of Washington's Lending and Home Ownership Act by RCS directing NWTS to take unlawful action); *Complaint* ¶162 (violation of Washington's Deed of Trust Act by failing to adhere to duty of good faith) with respect to NWTS. The Court's previous orders already stated that the jury would be allowed to consider those violations as evidence of negligence. The Court should determine that the Defendants have not demonstrated that there is no disputed issue of material fact when there remains a question of fact to be determined by the jury.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask the court to deny Defendants' Joint Motion for Summary Judgment in its entirety.

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 25

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797

Dated this <u>19th</u> day of <u>June</u> 2017,

/s/ Christopher Edwards
_____
Douglas Johns WSBA# 29424
Christopher Edwards WSBA# 51389
Attorneys for Plaintiff

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on the June 19, 2017, I caused to be electronically filed the foregoing

3  RESPONSE OPPOSING JOINT MOTION FOR SUMMARY JUDGEMENT OF

4  DEFENDANTS RESIDENTIAL CREDIT SOLUTIONS, INC. AND NORTHWEST TRUSTEE

5  SERVICES, INC along with the DECLARATION OF JONATHAN SMITH and EXHIBITS;

6
7  THE DECLARATION OF CHRISTOPHER EDWARDS and EXHIBITS, and THE

8  DECLARATION OF ROBIN HARTLEY with the Clerk of the Court using the CM/ECF System

9  which will send notification of such filing to the following (and staff or coworkers of the

10 following):

11
12 **Joshua Schaer:**     jschaer@rcolegal.com

13 **Michael J Kapaun:**     mjk@witherspoonkelley.com

14 **Peter J Salmon:**     PSalmon@aldridgepite.com

15 **Steven Joseph Dixson:**     sjd@witherspoonkelley.com

16

17
18 Dated: June 19, 2017

19

20                                          /s Christopher Edwards

21
22                                          _____

23                                          Christopher Edwards

24

25

26

RESPONSE OPPOSING JOINT MOTION
FOR SUMMARY JUDGMENT- 27

SMITH & JOHNS PLLC
12207 NE 8TH STREET
BELLEVUE, WA 98005
425-452-9797